THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
GARY J. QUIGLEY, Defendant-Appellee.

Fourth District   No. 4—91—0649

Opinion filed February 13, 1992.—Rehearing denied April 16, 1992.

Thomas J. Brown, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Carey J. Luckman, of Pontiac, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Dwight police officers arrested defendant and charged him with driving under the influence of alcohol (DUI) in violation of section 11—501(a) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)). Thereafter, he was charged by criminal complaint with DUI, driving with a blood-alcohol content in excess of 0.10, and unlawful transportation of alcoholic liquor in a motor vehicle. (Ill. Rev. Stat. 1989, ch. 95½, pars. 11—501(a)(2), (a)(1), 11—502.) Defendant moved to quash the arrest and suppress evidence. The Livingston County circuit court granted the motion and also granted rescission of the statutory summary suspension of defendant's driver's license. The State appeals, contending the trial court's order substantially impairs its ability to prosecute the case. We reverse and remand.

Dwight police officer Tim Henson testified he observed the defendant on June 7, 1991, at approximately 11 p.m. Defendant stopped his car at the intersection of Routes 47 and 17 in Dwight, a four-way stop. He got out of his car and went to the vehicle stopped behind him. He then asked the woman driving the car "where she learned to fucking drive," exchanged a few more words with her, and returned to his car, which he had left running. The entire exchange lasted 15 to 20 seconds and Henson never heard defendant threaten the woman or suggest they would meet later. He never saw defendant beat on her car or become physically aggressive. He observed no weapons. Defendant drove off in one direction and the woman in another. The two cars involved in the incident were the only vehicles at the intersection and the only vehicles within view on the two roads.

Henson followed defendant and signaled him to stop, using the flashing red lights on his squad car. On approaching defendant's car, Henson smelled "a strong odor of alcoholic beverage coming from the vehicle." He informed defendant he had made the stop to investigate the problem between defendant and the woman in the other car. The stop ultimately resulted in defendant's arrest.

Officer Glenn Peters, on patrol in the squad car with Henson, corroborated Henson's testimony.

The State filed a verified criminal complaint, charged defendant with two counts of DUI (Ill. Rev. Stat. 1989, ch. 95½, pars. 11—501(a)(2), (a)(1)), and one count of unlawful transportation of alcoholic liquor in a motor vehicle (Ill. Rev. Stat. 1989, ch. 95½, par. 11—502).

Count II of the complaint alleged the concentration of alcohol in defendant's breath exceeded 0.10%. Because the concentration of alcohol in defendant's breath exceeded 0.10, his driver's license was summarily suspended pursuant to section 11—501.1 of the Code. Ill. Rev. Stat. 1989, ch. 95½, pars. 11—501.1(d), (e).

On July 26, 1991, the defendant filed a motion to quash his arrest and suppress evidence. The motion alleged the stop of defendant's car was made without specific and articulable facts and without probable cause. Further, defendant challenged the warrantless arrest and search of his car. Even if the officers properly stopped the car, defendant asserted there was no probable cause to justify the search.

The court conducted a hearing on defendant's motion on August 1, 1991. The parties agreed the motion would also be deemed a petition to rescind the statutory summary suspension as the primary issue was whether the stop of the vehicle was lawful. The court granted the motion and also rescinded the statutory summary suspension of defendant's driver's license.

The court stated:

"Well, I believe that the current state of the law is that there seems to be three tiers of or layers of police involvement with a citizens [sic] probable cause arrest which we all agree this is far from, Terry stop, and then I think there's something in the nature of some sort of community caretaking function involved which I don't think this really would entail either.

So we're dealing with whether this was a valid Terry stop, reasonable suspicion that crime was afoot.

Here, we just have a situation, from what the officers observed, one motorist was upset at another motorist apparently over the way the other motorist was driving. Whether right or wrong, we don't know; and obviously inappropriately the Defendant got out of the car and went back and cussed at the lady. But from the testimony, he was out of the car no more than 15 to 20 seconds. So it was a very brief, temporary stop or interference with the traffic; and apparently there was no interference other than with the two vehicles involved.

And here from the evidence, as Mr. Luckman [(defense counsel)] pointed out, the stated purpose of stopping the Defendant was not to arrest him or warn him dealing with the two vehicles sighted but rather just to find out what was going on.

Now, I can see a real problem obviously if both the cars continued in the same direction and there would be a possibility of

a continued confrontation; and Dwight isn't the biggest city in the world; and two people at 11 o'clock at night could still meet up with each other. But from the evidence, the Defendant turned left and the lady behind him went straight.

So it would appear from the evidence that there was no conceivable possibility of any further problems between these two motorists. It was sort of a temporary yelling back and forth or argument, and then they went on their merry way [sic].

This isn't a whole lot different from the situation where a Defendant and a person may stop, roll down his window, and yell at some other motorist. Here the Defendant went a little bit further—got out of his vehicle and went back and yelled at the lady.

\*\*\*

11—1303 [of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—1303)] talks about except when necessary to avoid conflict with other traffic or at an official traffic control device, no person shall stand or stop within 30 feet of a stop sign.

Here, of course, the Defendant was stopped; and he was lawfully stopped; and he had to stop. Now, he didn't have to get out and pause 15 to 20 seconds.

\*\*\*

I don't think that even though maybe technically 11—1303 could arguably, conceivably be violated, I don't think practically it has. I think somewhere common sense has to come into play.

11—1416 [of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—1416)], the same person, here we get into a question of whether the Defendant willfully and unnecessarily delayed the other lady from moving along. Yeah, technically there was a delay. Just a few seconds. But practically, I really don't think that's what this section was intended for.

Here, for a Terry stop, the purported reason for the officer stopping the man was to find out what was going on, which is fine. But here I think Terry requires some reasonable suspicion that some sort of crime was afoot. Here instead of reasonable suspicion, there was [sic] just two people arguing; and I don't think that's what, right or wrong, police can get involved with."

The State filed its notice of appeal on August 30, 1991, stating, in part: "Nature of the Order appealed from: At a motion to Quash Arrest and Suppress Evidence, the Court found that there was no probable cause for the stop made by the officer and, therefore, the search

and arrest were quashed[,] effectively dismissing the case." Defendant contends because the State failed to specify the docket number of the statutory summary suspension, and failed to reference the suspension in its description of the order from which it appeals, this court cannot consider the State's arguments regarding the suspension. The notice of appeal, however, indicated the State appeals from the order entered August 1, 1991, which included the rescission of the suspension.

On appeal, the State contends the court's order was manifestly erroneous because a reasonable, articulable suspicion existed to justify the investigatory stop and probable cause existed for the arrest. We conclude the stop was not a *Terry* stop, but was part of the community caretaking or public safety function of the police officers. The stop did not violate the fourth amendment.

The Supreme Court first identified the community caretaking function in *Cady v. Dombrowski* (1973), 413 U.S. 433, 441, 37 L. Ed. 2d 706, 714-15, 93 S. Ct. 2523, 2528:

> "Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."

The Illinois Supreme Court recognized the community caretaking function in *People v. Murray* (1990), 137 Ill. 2d 382, 560 N.E.2d 309, *rev'g* (1989), 188 Ill. App. 3d 488, 544 N.E.2d 1008. There, police officers observed the defendant asleep in a car parked on the side of the road. The officers woke him and asked him to exit the car and present identification. When defendant got out of the car, the officers observed a gun in the car and arrested him. The trial court denied defendant's motion to quash his arrest and suppress the evidence. The appellate court reversed (*Murray*, 188 Ill. App. 3d 488, 544 N.E.2d 1008), concluding an unconstitutional seizure occurred when defendant was ordered to exit the car and show identification.

■■ ■ The supreme court found no violation of defendant's fourth amendment rights. The court divided police-citizen encounters into three tiers. The first is arrest, which must be supported by probable cause. The second is a *"Terry"* stop, requiring reasonable suspicion of criminal activity. The third tier is the community caretaking function, also known as the public safety function. This tier of the police-citizen encounter "involves no coercion or detention and therefore does not involve a seizure." (*Murray*, 137 Ill. 2d at 387, 560 N.E.2d at 311.) The *Murray* court cited several examples of circumstances indicative of a seizure, originally set forth by the United States Supreme Court in *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870:

> "(1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) some physical touching of the person of the citizen, and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. (*Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.)" *Murray*, 137 Ill. 2d at 390, 560 N.E.2d at 313.

Because the officers used no physical force or show of authority, the court concluded no finding of a seizure could be supported. Approaching defendant's vehicle and tapping on the window to wake him was not a seizure. The record indicated the officers asked, rather than ordered, defendant to exit the car. "This request allowed the officers to see whether the person they had just awakened and who may have appeared to be in some distress was fit to drive." (*Murray*, 137 Ill. 2d at 393, 560 N.E.2d at 314.) The supreme court reversed the appellate court, concluding there was no violation of defendant's fourth amendment rights.

■■ The two police officers here arguably had reasonable suspicion criminal activity was afoot, ranging from disorderly conduct to assault to unauthorized stopping on the highway. The officers were candid, however, in conceding their purpose in stopping defendant was simply to investigate the problem between defendant and the other motorist. The officers followed defendant for one block and pulled him over after signaling with overhead flashing lights. Another police car followed the other vehicle so defendant was not singled out to be followed. The officers did not display a weapon or order defendant out of his car. Officer Henson simply approached defendant's vehicle to inquire about the incident at the intersection. A stop in these circumstances was part of the community caretaking function and did not violate defendant's fourth amendment rights.

The defendant exited his running vehicle late at night at a highway intersection. He left the running vehicle unattended, however briefly, and approached the vehicle behind him. He loudly cursed and insulted the driver and obstructed the roadway. He then returned to his vehicle and drove away. It was not unreasonable or overzealous or intrusive for the officers to briefly stop defendant to inquire of his loud, confrontational and bizarre behavior. Not every contact between police and citizens is meant to detect crime. The police have a public safety role which the fourth amendment permits them to perform so long as they do so reasonably and with a minimum of intrusion into the privacy and mobility of the citizenry.

A trial court's ruling on a motion to suppress will not be overturned on review unless it was against the manifest weight of the evidence. (*Murray*, 137 Ill. 2d at 387, 560 N.E.2d at 311; *People v. Bauman* (1990), 204 Ill. App. 3d 813, 816, 562 N.E.2d 336, 339.) We conclude the trial court's decision to quash defendant's arrest, suppress the evidence and rescind his statutory summary suspension was against the manifest weight of the evidence. The order of the Livingston County circuit court is reversed.

Reversed, and cause remanded.

COOK and LUND, JJ., concur.