JETER RAY BARRETT

v.

COMMONWEALTH OF VIRGINIA

No. 0532-92-2

Decided October 19, 1993

COUNSEL

R. Michael McKenney (Smith, Murphy & Taliaferro, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Jeter Ray Barrett appeals from his conviction for driving while intoxicated under Code § 18.2-266, his third such offense within a ten-year period. He argues that the trial court erred in finding that the stop of his car, in the absence of reasonable suspicion of criminal activity, did not violate the fourth amendment. For the reasons set forth below, we reverse appellant's conviction.

According to the parties' joint brief statement of facts, the evidence presented at trial showed the following: On the evening of October 2, 1991, while driving west on Route 360 in Northumberland County, State Trooper Lyons observed appellant's pick-up truck parked partially on the shoulder and partially on private property adjoining the eastbound lane. Lyons turned around and returned to find the truck moving forward as if to re-enter the highway, but its wheels were still partially on the shoulder and partially in the private yard. Lyons pulled behind the truck and activated his flashing lights. He testified that his purpose in doing so was only to determine whether the vehicle was experiencing any mechanical problems and not to investigate any perceived violation of the law. Appellant does not question this intent. The vehicle stopped. When Lyons approached it, he "smelled a strong odor of alcohol on or about" appellant's person. Appellant admitted that he had been drinking and performed "very poorly" on three field sobriety tests. Lyons then administered a breathalizer and arrested appellant for driving under the influence.

At trial, appellant moved to dismiss the charge on the ground that the officer lacked the reasonable suspicion necessary to justify the initial stop. The trial court denied appellant's motion to dismiss, although its explanation for so doing is not entirely clear from the statement of facts. At the conclusion of the Commonwealth's case, appellant moved to strike on the ground that the initial stop was improper, but the court denied his motion. Appellant presented one witness in his own behalf and then renewed his motion to strike, which

the court again denied. After being found guilty as charged, appellant moved to set aside the verdict as contrary to the law and evidence, and the court again denied his motion.

■ Appellant concedes that if the officer had pulled up behind him *before* the truck had started moving, the encounter would not have constituted a seizure. *See, e.g., Carson v. Commonwealth*, 12 Va. App. 497, 500, 404 S.E.2d 919, 920-21, *aff'd on reh'g*, 13 Va. App. 280, 410 S.E.2d 412 (1991) (en banc), *aff'd*, 244 Va. 293, 421 S.E.2d 415 (1992) (upholding, as not a seizure, officer's approach of appellant's car while it was stopped at toll booth). However, because appellant's vehicle was actually in motion at the time, he argues that the stop constituted a seizure that required a reasonable suspicion of criminal activity in order to justify it. Clearly, Officer Lyons' behavior in pulling up behind appellant and activating his flashing lights constituted a seizure, a show of authority with which appellant complied. *See, e.g., Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). We conclude that a reasonable person in appellant's position, based on Officer Lyons' activation of his flashing lights, would have concluded that he had no choice but to comply with the officer's show of authority by stopping his vehicle. *See* Code § 46.2-817.

■ We next assess Officer Lyons' justification for the seizure. In so doing, we keep in mind that the Fourth Amendment does not proscribe all searches and seizures, only those that are "unreasonable." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). "[The officer's] actions [in stopping the vehicle] are to be tested 'under a standard of objective reasonableness without regard to [his] underlying [subjective] intent or motivation . . . .'" *Limonja v. Commonwealth*, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 480 (1989) (en banc) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978) (footnote omitted)), *cert. denied*, 495 U.S. 905 (1990); *see United States v. Smith*, 799 F.2d 704, 708 (11th Cir. 1986) (holding that pretextual arrest is valid as long as evidence shows that "a reasonable officer *would* have made the seizure in the absence of illegitimate motivation"). An officer may conduct a valid automobile stop if he has "a reasonable [articulable] suspicion, based upon objective facts, that the individual is involved in criminal activity." *Jacques v. Commonwealth*, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (quoting *Leeth v. Commonwealth*, 223 Va. 335, 340, 288

S.E.2d 475, 478 (1982) (citations omitted)); *see Terry,* 392 U.S. at 30-31.

The Commonwealth assumes *arguendo* that Officer Lyons had no reasonable suspicion that appellant was engaged in criminal activity, but argues that reasonable suspicion of criminal activity is only one of several justifications for an intrusion such as this one. Citing the United States Supreme Court's holding in *Cady v. Dombrowski,* 413 U.S. 433, 439, 441 (1973), the Commonwealth asserts that officers may conduct seizures such as this one in the routine execution of "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," as long as those seizures are reasonable. Under the facts of this case, we decline to so hold.

In *Cady v. Dombrowski,* in discussing the reasonableness of automobile searches, the United States Supreme Court noted the following:

Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. . . . [O]ften [that] non-criminal contact with automobiles will bring . . . officials in "plain view" of evidence, fruits, or instrumentalities of a crime, or contraband.

413 U.S. at 441. The Supreme Court discussed these "community caretaking functions" again in *South Dakota v. Opperman,* 428 U.S. 364, 368 (1976), and *Colorado v. Bertine,* 479 U.S. 367, 372 (1987). In all three of these cases, however, the Court addressed the propriety of inventory searches pursuant to otherwise valid automobile seizures. In *Cady,* the police obtained custody of appellant's car following an automobile accident; in *Opperman,* the police impounded appellant's

car for multiple parking violations; in *Bertine,* the police arrested appellant for driving under the influence. The Supreme Court has not extended the "community caretaking function" to validate the type of encounter that occurred in this case, thereby permitting seizures of people in the absence of a reasonable suspicion of criminal activity. *Cf. Watertown Police Union Local 541 v. Town of Watertown,* 555 A.2d 406, 411 n.5 (Conn. 1989) (in contract dispute, court said of "community caretaking" reference in *Cady,* "While the court's discussion does indicate that police officers have a great deal of contact with motor vehicles and often make investigative stops, it creates no public policy regarding motor vehicle stops").

Courts in several of our sister jurisdictions have nevertheless extended this concept to permit such seizures in a variety of different factual situations falling short of reasonable suspicion. *See, e.g., Illinois v. Quigley,* 589 N.E.2d 133, 135-36 (Ill. App. Ct.) (permitting stop of auto whose driver had exchanged heated words with another motorist), *appeal denied,* 602 N.E.2d 469 (Ill. 1992); *State v. Vistuba,* 840 P.2d 511, 514 (Kan. 1992) (permitting stop under *Cady* where officer observed erratic driving at speed significantly below posted limit); *Maine v. Pinkham,* 565 A.2d 318, 320 (Me. 1989) (citing *Cady* in allowing safety stop for "misuse of the marked lanes"); *Provo City v. Warden,* 844 P.2d 360, 363-65 (Utah Ct. App. 1992) (formulating test requiring showing of imminent danger to life or limb in order to validate *Cady* stop of motorist who reportedly had threatened suicide); *Vermont v. Marcello,* 599 A.2d 357, 358 (Vt. 1991) (upholding stop of motorist following report of another that "[t]here's something wrong with that man"); *see also United States v. King,* 990 F.2d 1552, 1560-61 (10th Cir. 1993) (applying *Cady* to allow questioning of person stopped in car at scene of accident because specific and articulable facts reasonably warranted the intrusion); *United States v. Wallace,* 889 F.2d 580, 582 (5th Cir. 1989), *cert. denied,* 497 U.S. 1006 (1990) (validating seizure of person who possessed handgun and had threatened suicide). *But see United States v. Dunbar,* 470 F. Supp. 704, 707-08 (D. Conn.), *aff'd mem.,* 610 F.2d 807 (2d Cir. 1979) (after balancing governmental and privacy interests, court rejected use of *Cady* "community caretaking function" to legitimize stop of motorist simply because he appeared lost). In *New Jersey v. Goetaski,* 507 A.2d 751 (N.J. Super.), *cert. denied,* 517 A.2d 443 (N.J. 1986), for example, the New Jersey Court of Appeals upheld a 4 a.m. stop of a motorist observed driving slowly along the shoulder of a state highway for one-tenth of a mile with his left-turn indicator on. *Id.* at 752. As in our

case, it was undisputed that the officer observed no violation of the law and stopped the defendant only to determine "if there was any problem or difficulty." *Id.* After balancing the competing interests of public safety and individual liberty as required by the Fourth Amendment, it concluded that "the facts were unusual enough for the time and place to warrant the closer scrutiny of a momentary investigative stop and inquiry." *Id.* at 753. It also noted, however, "that this stop is about as close to the constitutional line as we can condone." *Id.*

Unlike the New Jersey Court of Appeals in *Goetaski,* we decline to extend the community caretaker language of *Cady* to validate seizures of people in the absence of reasonable suspicion. As an abstract proposition, Officer Lyons' behavior in this case may appear entirely reasonable; however, under our current case law, such a stop would be unconstitutional under these facts. It was undisputed that Lyons had no reasonable suspicion that appellant was engaged in criminal activity and that he stopped appellant only to see if he needed assistance. Although Officer Lyons' goal was admirable, we reject the Commonwealth's contention that such a stop was justified under the officer's community caretaking function. Such a term might appropriately *describe* the officer's actions and intent both in approaching a car stopped by the side of the road and in stopping a moving vehicle, but it is not the legal basis which justified either encounter. *See, e.g., North Dakota v. Langseth,* 492 N.W.2d 298, 300-02 (N.D. 1992) (holding that officer pursuing van which, although originally parked, pulled away when the officer stopped behind it, effected a seizure which was not legitimized by *Cady* because caretaker function does not validate otherwise unconstitutional nonconsensual encounters). Finally, even if we were to adopt the community caretaker exception, it would not validate the seizure. At the time Trooper Lyons made the stop, he had no basis for perceiving or even suspecting a public safety hazard, for appellant's vehicle was moving without apparent difficulty. We find it unnecessary to address appellant's concession that the approach of his vehicle would not have constituted a seizure if his car had remained stopped on the side of the road.

In the absence of a clear articulation by either the United States or the Virginia Supreme Court, we decline to adopt the community caretaker function as a valid basis for effecting a seizure under the facts of this case. We, therefore, hold that the trial court erred in denying appellant's motion to dismiss, and we reverse his conviction.

*Reversed and dismissed.*

Coleman, J., and Willis, J., concurred.