**Richmond**

JETER RAY BARRETT

v.

COMMONWEALTH OF VIRGINIA

No. 0532-92-2

Decided August 9, 1994

COUNSEL

R. Michael McKenney (Smith, Murphy & Taliaferro, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

## UPON A REHEARING EN BANC

OPINION

**WILLIS, J.**—On appeal from his conviction of driving while intoxicated, Code § 18.2-266, his third such offense within a ten-year period, Jeter Ray Barrett contends that the trial court erred in finding that the stop of his truck, in the absence of reasonable suspicion of criminal activity, did not violate the Fourth Amendment. We find no error and affirm the judgment of the trial court.

About 9:20 p.m. on the evening of October 2, 1991, while driving west on Route 360 in Northumberland County, State Trooper Lyons saw Barrett's pickup truck stopped with its left wheels on the eastbound shoulder and its right wheels on the adjoining private property. Lyons could see two people in the truck. He turned around and returned to "investigate whether the vehicle had broken down." He found the truck moving forward as though to enter the highway, but its wheels were still partly on the shoulder and partly in the private yard. Lyons pulled behind the truck and activated his flashing lights. He testified that his only purpose was to determine whether the driver was experiencing mechanical problems and not to investigate any perceived violation of law. Barrett does not question the trooper's stated purpose.

When Lyons pulled in behind it, the truck stopped. Lyons got out of his police cruiser and approached the truck. Finding Barrett to be the driver, he "smelled a strong odor of alcohol on or about" Barrett's person. Barrett admitted that he had been drinking and performed "very poorly" on three field sobriety tests. Lyons then administered a breathalyzer and arrested Barrett for operating a motor vehicle while under the influence of alcohol.

At trial, Barrett moved to dismiss the charge on the ground that Lyons lacked reasonable suspicion of criminal activity justifying the stop. The trial court denied the motion. At the conclusion of the Commonwealth's case, Barrett moved to strike the evidence on the ground that he had been stopped unlawfully. The trial court denied this motion. Barrett presented a character witness, rested, and renewed his motion to strike, which the trial court again denied. After being found guilty, Barrett moved to set aside the verdict as contrary to the law and the evidence. The trial court denied this motion.

Barrett concedes that had the officer approached his truck before it began moving, the encounter would not have constituted a seizure. *See, e.g., Carson v. Commonwealth*, 12 Va. App. 497, 500, 404 S.E.2d 919, 920-21, *aff'd en banc*, 13 Va. App. 280, 410 S.E.2d 412 (1991), *aff'd*, 244 Va. 293, 421 S.E.2d 415 (1992). However, he argues that because his truck was actually moving and he stopped only in obedience to the trooper's pulling in behind him with emergency lights flashing, the stop constituted a seizure, justifiable only if based upon a reasonable suspicion of criminal activity.

The Commonwealth argues that, seeing the truck stopped partly on the shoulder and partly off the right-of-way, Trooper Lyons reasonably perceived a situation suggestive of mechanical or personal distress, and that in returning to investigate, Trooper Lyons was discharging his duty as a community caretaker. The Commonwealth argues that it was the proper performance of this duty that brought about the encounter between Trooper Lyons and Barrett and placed Lyons in a lawful position to make the observations upon which he based the arrest and charge. We agree.

■ Clearly, Barrett was seized when Trooper Lyons pulled in behind him and activated his flashing lights.

[S]topping an automobile and detaining its occupants constitute a "seizure" within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention quite brief.

*Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

> [A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

*United States v. Mendenhall*, 446 U.S. 544, 554 (1980). By pulling in behind Barrett and activating his cruiser's flashing lights, Trooper Lyons commanded Barrett to stop and to submit to inquiry. Barrett complied as required. *See* Code §. 46.2-817. Lyons's actions constituted a seizure.

> [W]hat the [Fourth Amendment] forbids is not all searches and seizures, but unreasonable searches and seizures.

*Terry v. Ohio*, 392 U.S. 1, 9 (1968). The justification of a stop is to be tested against a standard of objective reasonableness. *See Limonja v. Commonwealth*, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 480 (1989) (en banc), *cert. denied*, 495 U.S. 905 (1990). An investigative stop is valid if supported by reasonable and articulable suspicion of criminal activity, based upon objective facts. *See Jacques v. Commonwealth*, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991).

Conceding *arguendo* that Trooper Lyons had no reasonable suspicion that Barrett was engaged in criminal activity, the Commonwealth contends that reasonable suspicion of criminal activity is not the only justification for an investigative seizure. Citing *Cady v. Dombrowski*, 413 U.S. 433 (1973), the Commonwealth argues that officers may conduct investigative seizures in the routine execution of community caretaking functions, totally divorced from the detection or investigation of crime, so long as those seizures are reasonable. We agree.

In *Cady v. Dombrowski*, the respondent, an Illinois policeman, was involved in a motor vehicle accident in Wisconsin. His car was removed from the scene of the accident and taken to a privately owned garage. The respondent was hospitalized. Understanding that Illinois policemen normally carried their service revolvers wherever they went and not having found the respondent's revolver on his person, the Wisconsin police feared that the revolver might be misappropriated and decided to look for it in the respondent's car. During the course of the search, they came upon evidence of the crime for which the respondent was prosecuted.

Upholding the constitutional validity of the search, the Supreme Court said:

> Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id.* at 441. *See also South Dakota v. Opperman*, 428 U.S. 364 (1976); *Colorado v. Bertine*, 479 U.S. 367 (1987).

■ Other jurisdictions have acknowledged that the duty of the police extends beyond the detection and prevention of crime, to embrace also an obligation to maintain order and to render needed assistance. This duty is aptly termed the community caretaker function. *See State v. Chisholm*, 39 Wash. App. 864, 867, 696 P.2d 41, 43 (1985) (a police officer may stop a vehicle briefly to warn the occupants that an item of their property is in danger. Such a momentary seizure, being "reasonable," does not require the suppression of contraband or other evidence of crime thereby discovered); *State v. Goetaski*, 209 N.J. Super. 362, 507 A.2d 751 (upholding the use of evidence disclosed when an officer stopped a vehicle, being driven slowly on the shoulder with left turn signal flashing, to inquire whether there was "something wrong"), *cert. denied*, 104 N.J. 458, 517 A.2d 443 (1986); *Crauthers v. State*, 727 P.2d 9 (Alaska 1986) (a car pulled next to a police car. The driver rolled down his window and appeared to seek assistance. The officer activated his flashing lights as a safety precaution and stopped the car to inquire what was needed); *State v. Anderson*, 142 Wis. 2d 162, 417 N.W.2d 411 (1987) (police authority to stop a vehicle is not limited to circumstances of criminal investigation); *State v. Pinkham*, 565 A.2d 318 (Me. 1989) (upholding evidence obtained during stop to promote safety. "If we were to insist upon suspicion of activity amounting to a criminal or civil infraction . . . , we would be overlooking the police officer's legitimate role as a public servant to assist those in distress and to maintain and foster public safety"); *State v. Quigley*, 226 Ill. App. 3d 598, 589 N.E.2d 133, *appeal denied*, 146 Ill. 2d 645, 602 N.E.2d 469 (1992) (upholding an arrest based on evidence obtained when officers stopped a car to investigate an altercation between drivers);

*Provo City v. Warden*, 844 P.2d 360 (Utah App. 1992) (recognizing community caretaker function as a predicate for investigative seizure, but requiring "circumstances threatening life or safety"); *State v. Marcello*, 157 Vt. 657, 599 A.2d 357 (1991) (upholding the use of evidence obtained upon an investigative stop of a vehicle based upon another motorist's report, "there's something wrong with that man"); *State v. Vistuba*, 251 Kan. 821, 840 P.2d 511 (1992) (upholding the stop of a vehicle being driven such that the officer feared that the driver was falling asleep); *United States v. King*, 990 F.2d 1552 (10th Cir. 1993) (recognizing the right of an officer to effect an appropriate seizure to maintain order at the scene of a traffic accident).

We have heretofore recognized the duty of the police to maintain order and to render assistance. In *Reynolds v. Commonwealth*, 9 Va. App. 430, 388 S.E.2d 659 (1990), we said:

> In determining the reasonableness of police action on appeal, as well as in the trial court, consideration must be given to the fact that police owe "duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventive measures, and providing services on an emergency basis."

*Id.* at 436, 388 S.E.2d at 663 (citation omitted). *See also Hogan v. Commonwealth*, 15 Va. App. 355, 366, 423 S.E.2d 841, 849 (1992).

■ We hold that the duty of the police embraces the function of maintaining public order and providing necessary assistance to persons in need or distress. An officer who harbors a reasonable and articulable suspicion, based upon observed facts or a credible report, that a citizen is in distress or in need of assistance, may lawfully effect an appropriately brief and limited seizure for the purpose of investigating that suspicion and rendering aid.

We find that Trooper Lyons acted appropriately in the discharge of his duty as a community caretaker. When he first saw Barrett's truck, stopped off the shoulder of the road in the nighttime, he reasonably perceived a situation of mechanical breakdown or personal distress. When he returned to the scene, the truck had begun moving, but in an unusual manner, proceeding

slowly, still partly on the shoulder and partly on private property. The trooper reasonably concluded that the occupants of the truck might need help. The driver could have been easing a malfunctioning truck up the shoulder, hoping to find assistance. The occupants could have been injured or sick. They might have been people whose safety would be jeopardized by being stranded on the highway. All these possibilities were consistent with the situation confronting Trooper Lyons. Had he simply passed by without inquiry or the offer of assistance, he would have failed in his duty to offer the alert, kindly helping hand that our society rightly expects of its police officers.

Because Trooper Lyons was engaged in the proper performance of his duty and lawfully approached the truck, his encounter with Barrett was lawful, and the charges based on his observations were proper.

The judgment of the trial court is affirmed.

*Affirmed.*

Moon, C.J., Baker, J., Bray, J., and Fitzpatrick, J., concurred.

Elder, J., with whom Barrow, J., joins dissenting.

I dissent for the reasons stated in the panel opinion. *See Barrett v. Commonwealth*, 17 Va. App. 196, 435 S.E.2d 902 (1993). I acknowledge and am in accord with the "community caretaking functions" first discussed by the United States Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433 (1973), and discussed subsequently in *South Dakota v. Opperman*, 428 U.S. 364 (1976), and *Colorado v. Bertine*, 479 U.S. 367 (1987). All of these cases discussed "community caretaking functions" in the context of police activities occurring *after* an otherwise valid seizure of an automobile. This concept as discussed in these cases simply does not apply to the facts of this case.

No United States or Virginia Supreme Court case cited by the majority defines the term "community caretaking" as applied by the majority in its opinion. The new, expanded "community caretaking function" adopted by the majority will effectively remove all objective limits on such police activity. I would reverse the conviction.

Coleman, J., with whom Barrow, J., and Koontz, J., join, dissenting.

I agree with the majority that law enforcement officers may lawfully make a stop or a seizure unsupported by a reasonable suspicion of criminal activity "in the routine execution of community caretaking functions, totally divorced from the detection or investigation of crime." However, I disagree that the facts are sufficient to show that Trooper Lyons was performing a community caretaking function when he stopped Barrett's vehicle. The "community caretaking" exception should be cautiously and narrowly applied in order to minimize the risk that it will be abused or used as a pretext for conducting an investigatory search for criminal evidence.

When Trooper Lyons first witnessed Barrett's truck stopped at night, partly on and partly off the shoulder of Route 360, he had a reasonable, objective basis to believe that the operator of the vehicle might be in need of assistance. However, when he turned and returned to the site and saw "the pickup truck . . . moving forward as if to re-enter the highway," Trooper Lyons stated that "it seemed odd since it was [his] impression that the vehicle could have pulled onto the roadway." In my opinion, at that point, the trooper's concerns about the truck's apparent disability had been dispelled. Thus, in my opinion, he lawfully could stop the vehicle only upon a reasonable suspicion of criminal activity. *See State v. DeArman*, 774 P.2d 1247, 1249-50 (Wash. Ct. App. 1989) (on very similar facts, once deputy determined driver was not having difficulty, no right to stop and compel identification). Because the situation no longer suggested that the operator of the vehicle was in need of assistance and Lyons had no reasonable articulable suspicion to make an investigatory stop, the seizure was unlawful. *See Reid v. Georgia*, 448 U.S. 438, 440-41 (1980); *Murphy v. Commonwealth*, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989); *see generally Terry v. Ohio*, 392 U.S. 1, 23-24 (1968). Accordingly, I dissent from the majority's conclusion that the community caretaking function justified the stop of Barrett's vehicle.