## CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Tyrone Edgar Waters

November 2, 1994

Case No. (Criminal) 9189

BY JUDGE THOMAS D. HORNE

This cause is before the Court on a Motion to suppress evidence seized by Detective Ricky Frye of the Leesburg Police Department from the Defendant, Tyrone Edgar Waters, on March 8, 1994. At approximately 10:15 on that date, Detective Frye, without a search warrant, observed, stopped, searched, and arrested the Defendant at the Loudoun House Apartments in Leesburg, Virginia. As a result of the encounter, Detective Frye seized a BB gun and a corncob pipe from the Defendant. The pipe was later found through laboratory tests to have cocaine residue in it.

The Defendant was indicted under Virginia Code, § 18.2-250 for possession of cocaine, a Schedule II controlled substance, and under Virginia Code, § 18.2-308.4, for possession of a firearm while in possession of a Schedule II controlled substance.

The Defendant has moved to exclude the evidence seized on March 8, 1994: the BB gun, the corncob pipe, and all fruits of those pieces of evidence. The burden is on the Commonwealth to prove that an exception to the warrant requirement exists in this case. *Black v. Commonwealth*, 223 Va. 277 (1982).

The first issue in this matter is whether or not Detective Frye's actions in seizing Mr. Waters' person and searching him were legal. If the seizure and search are found to be illegal, the second issue is whether or not the BB gun and the corncob pipe are admissible in the trial of this case.

The Court has reviewed the transcript of Detective Frye's testimony given before the Court on September 9, 1994, the Defendant's Memorandum of Points and Authorities, and the Commonwealth's response thereto. The Court also heard the arguments of counsel on the Motion to Suppress. In consideration of the above and the applicable law of the U.S. Constitution and the Commonwealth, the Court finds, for the reasons stated hereinafter, that the BB gun and the corncob pipe were found on Mr. Waters by Detective Frye as the result of an unconstitutional seizure of the Defendant and consequent unconstitutional search of the Defendant. The Court also rules that both pieces of evidence and fruits of the evidence procured therefrom are inadmissible in the trial of these charges against the Defendant.

The Fourth Amendment to the U.S. Constitution states that "the right of the people to be secure in their houses, persons, papers, and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized."

This provision of the Constitution, through the Fourteenth Amendment, protects residents of the Commonwealth from improper government intrusion. *Hawley v. Commonwealth*, 206 Va. 479, *cert. denied*, 383 U.S. 910, 86 S. Ct. 894 (1966). Detective Frye, a member of the Leesburg Police Department, was performing his routine foot patrol duties as an officer of the state on the night of March 8, 1994. His actions in stopping and searching the Defendant's person, an intrusion against which the Defendant had a reasonable expectation of privacy, are therefore governed by the Fourth Amendment.

Detective Frye's role as a state officer and Mr. Waters' reasonable expectation of privacy notwithstanding, the Commonwealth asserts that the seizure of Mr. Waters falls outside Fourth Amendment protections. The Commonwealth's assertion is that the encounter was casual and consensual in nature because the Defendant was not being detained by the officer. The Commonwealth cites *Florida v. Bostick*, 501 U.S. 429, 111 S. Ct. 2382 (1991), for the proposition that not all encounters between police officers and citizens are regulated by the Fourth Amendment. The U.S. Supreme Court wrote that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to 'disregard the police and go about his own business,' the encounter is consensual and no reasonable

suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Bostick* at 2386 (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 1551 (1991)).

According to the testimony of Detective Frye, at the time of the encounter, Detective Frye observed the Defendant walking unsteadily, apparently intoxicated, and perhaps ill. The Defendant walked past Detective Frye, then away from him toward a cluster of apartment buildings. Detective Frye testified that he then started walking behind the Defendant. The Defendant looked over his shoulder toward the officer, "as if to be suspicious," continuing "his unsteady type of actions and behavior." The detective then approached the Defendant and tapped him on the shoulder.

The Court is not of the belief that in the context of a meeting of this nature between a law enforcement officer and a citizen, a reasonable person would feel free to "disregard the police and go about his business," the test propounded in *Hodari D*. When a person is followed by a police officer, approached, and tapped on the shoulder by the officer, a reasonable person would not feel at liberty to walk away. This seizure does not fall outside of Fourth Amendment protections on this basis.

Detective Frye did not perform this search pursuant to a search warrant. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507 (1967).

Well established and commonly encountered exceptions to this rule include exigent circumstances, hot pursuit, and plain view, among others. In this case, the Commonwealth relies on the "community caretaker" adopted in Virginia in *Barrett v. Commonwealth*, 18 Va. App. 773 (1994), based on the U.S. Supreme Court's ruling in *Cady v. Dombroski*, 413 U.S. 433, 93 S. Ct. 2523 (1973). In *Cady*, the U.S. Supreme Court upheld as constitutional a search without a warrant of the trunk of an automobile where the police reasonably believed a revolver was located. That belief was not borne of suspicion that Dombroski had committed a crime with a revolver, but rather that they knew he was a policeman and was required to carry his weapon at all times. The search ultimately uncovered evidence which led to Dombroski's conviction for murder.

The Supreme Court ruled that the retrieval of the revolver from the trunk was a measure taken in the public interest to prevent the weapon from falling into unscrupulous hands. The Court explained that this case served an example of how the police perform "community caretaking

functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady* at 440. The Court decided that such a basis was constitutionally valid for the search in that case.

Virginia courts have recently tackled the question of the community caretaker exception to the warrant requirement. In *Barrett*, the Court of Appeals ruled that a stop of a vehicle made without reasonable suspicion of criminal activity, intended to determine whether the Defendant was having vehicle trouble, was valid under the officer's "community caretaker" role. In *Barrett*, a police officer stopped a car, which was moving slowly, a short time after he observed the vehicle to be stopped partly on the road shoulder and partly in a private yard. The driver was ultimately discovered to be intoxicated as a result of the stop and convicted.

The Court of Appeals agreed with the *Cady* rationale that "officers may conduct investigative seizures in the routine execution of community caretaking functions, totally divorced from the detection or investigation of crime, so long as those seizures are reasonable." *Barrett* at 776. The Court of Appeals elaborated: "An officer who harbors a reasonable and articulable suspicion, based on observed facts or a credible report, that a citizen is in distress or in need of assistance, may lawfully effect an appropriately brief and limited seizure for the purpose of investigating that suspicion and rendering aid." *Id.* at 778.

The instant case is factually distinguishable from the fact patterns upon which the "community caretaker" exception was crafted in *Cady* and *Barrett*. The Court does not find that the seizure of Mr. Waters by Detective Frye falls under that exception to warrantless searches. The seizure was unconstitutional.

The U.S. Supreme Court, in describing the nature of the community caretaking function of police in *Cady*, based its rationale on the notion that "because of the extensive regulation of motor vehicles and traffic and also because of the frequency with which a vehicle can become disabled or involved in an accident on the public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature." *Cady* at 440. The holding in this case does not confer a general "community caretaker" exception to unwarranted searches but instead seems simply to affirm the legality of

such searches performed on motor vehicles and operators of motor vehicles.

The Virginia Court of Appeals, while not explicitly limiting the adoption of the "community caretaker" exception to automobile searches, despite the fact that *Barrett* involved observation and stopping of an automobile, does limit the "community caretaker" exception to those situations where the role is reasonably undertaken. In addition to the "reasonable and articulable suspicion" language quoted *supra*, the Court of Appeals also adopted from *Cady* language limiting the community caretaker seizures to reasonable ones: "Officers may conduct investigative seizures in the routine execution of community caretaking functions, totally divorced from the detection or investigation of crime, *so long as those seizures are reasonable.*" *Barrett* at 776 (emphasis added).

The Court is of the opinion that this standard pronounced by the Court of Appeals, when applied to the facts of this case, renders the seizure illegal. The concept of the "community caretaker" exception, when grounded on a reasonableness basis, necessarily demands a case-by-case approach to determine the validity of the seizure. The rule announced in *Cady* and refined in Virginia in *Barrett* was promulgated under fact patterns involving stops and searches of automobiles. This case involves the stopping and searching of a man outside of an apartment complex.

Fourth Amendment jurisprudence has long distinguished the expectation of privacy in vehicles from the expectation of privacy in one's home or on one's person. The "mobility and vulnerability" of vehicles "are conditions which limit the reasonableness of expectations of privacy, and the fact that they are subject to pervasive regulation leads to diminished expectations of privacy." *California v. Carney*, 471 U.S. 386, 393-395, 105 S. Ct. 2066, 2070 (1985). Because the operation of automobiles is an inherently dangerous proposition, the burden of justifying a stop of a vehicle that appears to have mechanical problems, one which appears to be operated by an impaired driver, or one whose location poses a danger to persons in other vehicles, is not a high one because of the risk of harm to the public.

In this case, however, Detective Frye approached the Defendant because the Defendant was "unsteady on his feet" and "appeared intoxicated." The officer did not report that the Defendant had stumbled, fallen, or walked into traffic, or any situation which would put the Defendant or another in immediate danger of harming himself. The Defendant was not located in a remote, unpopulated area, where a reasonable inference might

be that he was disoriented or lost. The Defendant was not traversing a particularly treacherous piece of terrain. The risk of harm to the Defendant was little in comparison to the intrusion that the stop incurred on the Defendant's privacy. It was not reasonable for Detective Frye to stop Mr. Waters based on the observations to which he has testified.

The Court would be uneasy in ratifying the stopping of a person simply because he looked unsteady on his feet. This would open the door to allowing arbitrary stops of people, a practice which the Fourth Amendment was designed to prevent. The government does not have the authority to stop people for any random reason. The Court does not question the motives of Detective Frye; the Court simply refuses to state that a seizure such as this is permissible.

Evidence which has been seized by government officials in violation of the Fourth Amendment is not admissible by the Commonwealth into evidence in a trial of this matter. *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961); *Gaddis v. Peyton*, 207 Va. 376 (1966). The BB gun and the corncob pipe are therefore inadmissible.

Evidence shall also be excluded if it was obtained as a proximate result of a violation of the Fourth Amendment. *Wong Sun v. United States*, 371 U.S. 471 (1986); *Commonwealth v. Ealy*, 12 Va. App. 744 (1991). Any evidence of the cocaine residue on the corncob pipe and other fruits of the illegal seizure and search are also, therefore, inadmissible.

The Court recognizes the value of community caretaking functions which police officers undertake. This ruling does not inhibit the ability of police officers to come to the aid of citizens who are genuinely in danger or in need of assistance. This ruling does protect citizens from arbitrary stops and searches.

Ms. O'Donnell shall draw an Order suppressing evidence obtained as a result of the impermissible seizure and search, to which Mr. Hanrahan may note exceptions.