ANNUNZIATA, Judge,
with whom OVERTON, Judge, joins, dissenting.
The threshold and dispositive issue in this case is whether the officers faced circumstances sufficient to justify their entry into and search of the second floor of appellant’s home.[1] Appellant does not dispute that if the entry was lawful, the evidence to support his convictions was properly seized and admitted into evidence. The Commonwealth concedes that if the entry was unlawful, all the seized evidence was tainted and inadmissible to support appellant’s convictions.
“The ultimate standard set forth in the Fourth Amendment is reasonableness.” Cady v. Dombrowski, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). Unreasonable searches and seizures are prohibited, but not those which are “reasonable in the circumstances.” Verez v. Commonwealth, 230 Va. 405, 410, 337 S.E.2d 749, 752 (1985). Warrantless *33 entries and warrantless searches are presumed to be unreasonable, and the Commonwealth bears the burden to prove their justification. E.g., id,.; Commonwealth v. Ealy, 12 Va.App. 744, 751, 407 S.E.2d 681, 686 (1991).
In the present case, the trial court found the officers’ entry of the second floor of appellant’s home justified under the community caretaker doctrine. See Commonwealth v. Waters, 20 Va.App. 285, 456 S.E.2d 527 (1995); Barrett v. Commonwealth, 18 Va.App. 773, 447 S.E.2d 243 (1994) (en banc), rev’d on other grounds, 250 Va. 243, 462 S.E.2d 109 (1995).[2] Pointing to the officers’ knowledge of appellant’s missing stepchild, the light shining through the second floor window, the unusual smell permeating the house, appellant’s apparent beating of his wife, and the fact that the officers were the last to leave appellant’s home, the Commonwealth argues that we should uphold the trial court’s ruling. I agree.
[Qjuite clearly police have occasion to enter premises without a warrant for a variety of ... purposes. The police have “complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses”; by design or default, the police are also expected to “reduce the opportunities for the commission of some crimes through preventive patrol and other measures,” “aid individuals who are in danger of physical harm,” “assist those who cannot care for themselves,” “resolve conflict,” “create and maintain a feeling of security in the community,” and “provide other services on an emergency basis.”
3 Wayne R. LaFave, Search and Seizure § 6.6 at 389-90 (1996). The lawfulness of police action undertaken pursuant to such roles is sometimes evaluated in terms of the “community caretaking function,” first discussed by the United States *34 Supreme Court in Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Cady involved the warrantless search of an automobile.[3] First in Barrett and later in Waters, this Court relied on Cady and adopted the community caretaker doctrine to justify warrantless, investigative “seizures” of people for purposes of aiding a citizen reasonably believed to be in distress. This Court has also held that the community caretaker functions are not limited to automobile stops. Waters, 20 Va.App. at 291, 456 S.E.2d at 530.
Under the facts of this case, I would affirm the trial court’s application of the community caretaker doctrine to justify the warrantless entry into and investigative search of the second floor of appellant’s home. In so doing, I note that in the context of a warrantless entry and search, this Court has noted little, if any, distinction in Virginia law between the circumstances governing the application of the community caretaker doctrine and those governing the application of the “emergency” exception to the warrant requirement. Compare Waters, 20 Va.App. at 288-91, 456 S.E.2d at 529-30, and Barrett, 18 Va.App. at 776-79, 447 S.E.2d at 245-46, with Reynolds v. Commonwealth, 9 Va.App. 430, 436-37, 388 S.E.2d 659, 662-64 (1990), and Shannon v. Commonwealth, 18 Va.App. 31, 34-35, 441 S.E.2d 225, 226-27, aff'd on reh’g, 19 *35 Va.App. 145, 449 S.E.2d 584 (1994). This Court has defined the community caretaker function of the police to be that duty which “extends beyond the detection and prevention of crime, to embrace also an obligation to maintain order and to render needed assistance.” Barrett, 18 Va.App. at 777, 447 S.E.2d at 245. The community caretaker doctrine, like the emergency exception to the warrant requirement, is grounded in consideration of the fact that
police [officers] owe “duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventive measures, and providing services on an emergency basis.”
Barrett, 18 Va.App. at 778, 447 S.E.2d at 246 (quoting Reynolds, 9 Va.App. at 436, 388 S.E.2d at 663 (citation omitted)); see also Waters, 20 Va.App. at 289, 456 S.E.2d at 529; Shannon, 18 Va.App. at 34, 441 S.E.2d at 227. “[T]he duty of the police embraces the function of maintaining public order and providing necessary assistance to persons in need or distress.” Barrett, 18 Va.App. at 778, 447 S.E.2d at 246.
Applying the community caretaker doctrine, I would find that the officers’ entry into the second floor of appellant’s home was lawful.
The appropriateness of applying the community caretaker doctrine to a given factual scenario is determined by whether: (1) the officer’s initial contact or investigation is reasonable; (2) the intrusion is limited; and (3) the officer is not investigating criminal conduct under the pretext of exercising his community caretaker function.
Waters, 20 Va.App. at 290, 456 S.E.2d at 530. An officer may take appropriate action under the community caretaker doctrine where the officer maintains a reasonable and articulable suspicion, based on objective facts, that such action is necessary. See Barrett, 18 Va.App. at 778, 447 S.E.2d at 246. “Objective reasonableness remains the linchpin of determining the validity of [such] action....” Waters, 20 Va.App. at 290, 456 S.E.2d at 530. Cf. Reynolds, 9 Va.App. at 437, 388 S.E.2d *36 at 663-64 (applying objective reasonableness test to emergency exception to warrant requirement).
Determination of whether the officers had reasonable suspicion to exercise their community caretaker function involves a mixed question of law and fact. The trial court’s findings of historical fact will be upheld absent clear and manifest error. See Reynolds, 9 Va.App. at 437, 388 S.E.2d at 664. We review de novo the trial court’s application of those facts to the legal standard of “reasonable suspicion.” See Ornelas v. United States, 517 U.S. 690, 698, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996). That standard is determined from the perspective of the objectively reasonable police officer, and we give deference to the inferences the police officer draws from the historical facts with which he or she is faced. Id. at 699, 116 S.Ct. at 1663; Murphy v. Commonwealth, 9 Va.App. 139, 144, 384 S.E.2d 125, 128 (1989) (“[W]hen a court reviews whether an officer had reasonable suspicion ... it must view the totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer.”).
In the present case, the officers had a reasonable basis to justify the exercise of their community caretaker function, which led them to enter the second floor of appellant’s home. When the officers responded to appellant’s house, they had reason to believe that appellant recently had beaten his wife and that appellant’s stepson was missing. Upon their arrival, the officers noticed a light shining through a second floor window and determined that appellant was not on the second floor of the house when they arrived. One of the officers noticed a foul odor coming from somewhere in the house. Although neither officer heard any noise coming from the second floor, that alone would not preclude the presence of someone on that floor, and neither officer could be certain whether anyone else was in the house. The officers were assigned the duty to assure the safety and welfare of appellant’s two younger children asleep in the living room of the house, and they were the last to leave the premises. Before *37 leaving, the officers investigated the remaining rooms of the house to make certain that appellant’s missing stepson was not there and to avoid leaving anyone else behind and the house unsecured. The trial court’s finding that the officers went upstairs to search for the defendant’s missing child is a finding of historical fact supported by the evidence, and should not be disturbed. Reynolds v. Commonwealth, 9 Va.App. 430, 437, 388 S.E.2d 659, 663-64 (1990); see Shears v. Commonwealth, 23 Va.App. 394, 398, 477 S.E.2d 309, 311 (1996) (due weight is afforded “ ‘a trial court’s finding that [an] officer was credible and [that the officer’s] inference was reasonable’ ”).
I further disagree with the majority’s conclusion that the evidence in this case proves that the search was not “totally divorced from” a criminal investigation. Indeed, all the evidence is to the contrary. Because the officers were guided by their concern for the child they believed to be missing, their investigation was limited to those places where they could reasonably expect to find a person; they did not open any cabinets or containers.. Furthermore, in order to reach the conclusion that the search was instigated for the purpose of conducting a criminal investigation, the majority, a fortiori, has substituted its judgment for that of the trial court with respect to the weight of the evidence and the credibility of the witnesses, in contravention of well-settled principles governing the standard of review. See, e.g., Byers v. Commonwealth, 23 Va.App. 146, 152-53, 474 S.E.2d 852, 855 (1996) (citing Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992)).
Finally, I note that while lawfully present on the second floor, the officers discovered certain items in plain view, the incriminating nature of which was immediately apparent to them. Accordingly, the plain view rule was met, and the items were subject to seizure and admissible in evidence. See Reynolds, 9 Va.App. at 439, 388 S.E.2d at 665; Waters, 20 Va.App. at 291, 456 S.E.2d at 530.
Accordingly, I would affirm appellant’s convictions.

. There is no dispute that the officers’ initial entry into appellant’s home was lawful.

. In reversing Barrett, the Supreme Court held that the evidence did not support a "reasonable suspicion” that Barrett was in need of police assistance. The Supreme Court did not rule on this Court’s adoption of the community caretaker doctrine. 250 Va. at 247-48, 462 S.E.2d at 112.

. The Court in Cady discussed well-established privacy distinctions between automobiles and residences in affirming the reasonableness of the search in that case. 413 U.S. at 439-42, 93 S.Ct. at 2527. Such distinctions, however, have not precluded courts from evaluating warrantless entry and search of premises under the community caretaker function, see LaFave, supra, § 6.6 at 390 n. 3. While I recognize the distinction between the search of an automobile and the search of a home, certain factors relevant to the Cady analysis provide guidance here. First, the Cady Court noted that the “police had exercised a form of custody or control over the [disabled automobile]” as a result of their investigating an automobile accident and the disabled driver’s inability to make arrangements to have the automobile towed and stored. 413 U.S. at 442-43, 93 S.Ct. at 2528-29. Second, the Court noted that the police had the car towed to a private garage where, to protect the public, the trunk was searched in accordance with police procedure to assure the removal of a revolver the police believed to be there. Id. at 443, 93 S.Ct. at 2529. Finally, the Court noted that in conducting the "search,” the police were not motivated by a desire to find incriminating evidence of possible criminal behavior. Id.