**Richmond**

DOUGLAS CLAYTON REYNOLDS

v.

COMMONWEALTH OF VIRGINIA

VICKI JEAN REYNOLDS, s/k/a

VICKIE JEAN REYNOLDS

v.

COMMONWEALTH OF VIRGINIA

No. 1357-87-2

Decided February 13, 1990

432

Counsel

Willis F. Hutchens (William E. Johnson; Hutchens & Hutchens, P.C., on brief), for appellants.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**BAKER, J.**—Vicki Jean Reynolds (wife) and Douglas Clayton Reynolds (husband) (appellants) appeal their Hanover County Circuit Court (trial court) bench trial convictions for manufacturing of marijuana not for their own use and for possession of co-

caine.[1] Appellants allege (1) that the trial court erred in refusing to suppress evidence seized as a result of the warrantless entry by the police into their residence, (2) that the trial court erred by finding that the wife consented to the search of appellants' residence, and (3) that the evidence was insufficient to convict both husband and wife of manufacturing marijuana not for their own use.

On information, Hanover County Deputy Sheriff Gary Vitek (Vitek) stopped a vehicle driven by Mark Fogg (Fogg) and discovered in his possession stolen items, among which were a television set and two shotguns. Fogg confessed that he had stolen the items from appellants' residence. Fogg stated that he had twice entered the house through an opening on the screen porch and exited through the front door after the burglary. On one of those occasions husband and another person were on the premises, so Fogg left, returning a short while later to complete the burglary. Vitek arrested Fogg, radioed for assistance, and proceeded with Fogg to the scene of the crime. Investigator Bailey (Bailey) responded to the request, met Vitek and Fogg at appellants' house and assumed command of the investigation, with Vitek assisting him. Vitek suspected that someone might be injured or dead inside the house. He further thought there might be evidence of the breaking and entering inside the house and saw a need to secure the premises. Bailey also wanted to be certain the premises were secure. They entered the house believing appellants were victims, not suspects, of a crime.

At the house, Fogg led the officers to the place where he had entered. The officers inspected the area and photographed the point of entry. All three men then walked to the door where Fogg told them he had exited. A glass door was closed but the wooden door remained ajar. Without announcing their presence, they entered appellants' house through the open front doorway.

Fogg led Bailey and Vitek through the house directly to a porch where he had entered to commit the burglary. While there, Fogg directed the officers' attention to twenty-nine marijuana plants growing in tomato plant boxes in small paper cups. Some were

---

[1] Appellants were tried jointly in the trial court. After appellants' respective petitions were granted their attorney moved this Court to consolidate their respective cases on appeal. The motion was granted.

healthy; others appeared to be dead or in ill health. Upon making this discovery, Bailey contacted vice squad Investigators William Chenault and David Hines, who came to the premises, removed the plants and placed them on the hood of their vehicle. While awaiting the arrival of Chenault and Hines, Bailey was able to contact wife and inform her of the burglary. No search of the premises was made until wife returned to her house and consented to the search.[2]

Wife was arrested for manufacturing marijuana, advised of her constitutional rights, and questioned by the officers. She admitted that she was aware of a 14-inch tall marijuana plant in the kitchen but denied any knowledge of the plants on the porch. After she orally consented to a search of the house, the officers explained in detail a Consent to Search form which she read. She indicated that she understood its purpose and signed the form. The search produced a single beam scale located in a stereo cabinet stand, a smoking pipe on the floor next to a sofa, and a plastic bag containing cocaine found on the top shelf of a wardrobe in appellants' bedroom.

Wife argues that her consent to search was involuntary because it was given while she was under arrest, upset, in tears and isolated by the police from her mother, sister and brother, who had accompanied her to the house after she was informed of the burglary. The officers denied any coercion was used and testified that wife was in control of her emotions. At trial, appellants testified that the marijuana was for husband's personal use and that the scales were used to weigh wife's food in connection with her diet plan.

Appellants concede that the evidence, if admissible, is sufficient to prove that marijuana and cocaine were illegally possessed. They contend that neither illegal substance was properly admitted into evidence and that appellants' motions to suppress that evidence were erroneously denied by the trial court. Appellants further allege that the warrantless entry into their house by Bailey and

---

[2] Before asking wife's consent to search, the vice squad officers contacted the Commonwealth Attorney for Hanover County as to whether they should obtain a warrant to search. They were advised to first request her consent and if refused to secure the premises and obtain a warrant. The discovery of the cocaine was inevitable. *See Keeter v. Commonwealth*, 222 Va. 134, 140 n.2, 278 S.E.2d 841, 845 n.2, *cert. denied*, 454 U.S. 1053 (1981).

Vitek was in violation of their rights under the Fourth Amendment of the Constitution of the United States and Code § 19.2-59, and that, although the marijuana was in plain view, those exceptions should not be applied because the first entry was illegal. They also assert that wife's consent was not voluntary but should it be deemed voluntary, it too must be held to have been obtained in violation of the Fourth Amendment because it was obtained following the illegal entry of the house. Lastly, they assert that the evidence, if admissible, was insufficient to support the indictment charging that appellants manufactured marijuana *not for their own use*, in violation of Code § 18.2-248.1(c).

## I. *The Warrantless Entry*

Prior to the American Revolution, the right to be free from unreasonable searches and seizures was denied the Colonists by the infamous writs of assistance employed by the King's agents. From the day the Framers of the Constitution of the United States decided to rid themselves of the dreaded writs by the adoption of the Fourth Amendment our courts have condemned unjustified warrantless entries into a person's home. To protect against such entries a device which came to be known as "the exclusionary rule" was "judicially created [and] designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348 (1974). In the application of the exclusionary rule, however, we are constantly reminded that the Fourth Amendment does not forbid all searches and seizures, only unreasonable ones. *See Elkins v. United States*, 364 U.S. 206, 222 (1960); *Verez v. Commonwealth*, 230 Va. 405, 410, 337 S.E.2d 749, 752 (1985), *cert. denied*, 497 U.S. 813 (1986); *One 1963 Chevrolet Pickup Truck v. Commonwealth*, 208 Va. 506, 508, 158 S.E.2d 755, 757, *cert. denied*, 391 U.S. 964 (1968). Thus, a warrantless search and seizure may not be unlawful if it is not unreasonable. *Chevrolet Truck*, 208 Va. at 508, 158 S.E.2d at 758.

While it is established that, absent exigent circumstances, the threshold of one's home may not be crossed without a warrant, *see Payton v. New York*, 445 U.S. 573, 590 (1980), whether the exclusionary rule should be applied to exclude evidence discovered as a result of a warrantless crossing must be determined from an examination of the facts leading to the entry. In making that de-

termination at the trial level, the Commonwealth has a heavy burden to justify the warrantless entry, as all such entries are presumed to be unreasonable. *Verez*, 230 Va. at 410, 337 S.E.2d at 753. However, upon appeal from a trial court's denial of a motion to suppress the discovered evidence, the burden is upon the appellant to show, considering the evidence in a light most favorable to the Commonwealth, granting to it all inferences fairly deducible therefrom, that the denial constituted reversible error.[3] *Fore v. Commonwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied*, 449 U.S. 1017 (1980); *see also State v. Adamson*, 136 Ariz. 250, 665 P.2d 972, *cert. denied*, 464 U.S. 865 (1983).

In determining the reasonableness of police action on appeal, as well as in the trial court, consideration must be given to the fact that the police owe "duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventive measures, and providing services on an emergency basis." *Washington v. Bakke*, 44 Wash. App. 830, ____, 723 P.2d 534, 536 (1986). We have examined the record in this cause and find that it contains sufficient evidence to support the trial court's judgment denying the motion to suppress.

 The concept of "exigent circumstances" forms the basis of the recognized exceptions to the Fourth Amendment requirement that a warrant to search must be obtained prior to entry. *See Lowe v. Commonwealth*, 218 Va. 670, 677, 239 S.E.2d 112, 116 (1977), *cert. denied*, 435 U.S. 930 (1978). Among the circumstances accepted as providing "exigent circumstances" for a warrantless search are those where a true "emergency" exists.

> While exigent circumstances generally have been defined to exist where the suspect is in a position to flee as when he is in a car, or when the evidence is located in a place or under such conditions that it is likely to be destroyed while a warrant is sought, a further condition has been recognized as an exigent circumstance authorizing a warrantless or nonconsensual entry into a suspect's home. This exception is known as the "emergency doctrine." The applicability of the "emergency doctrine" as an exigent circumstance was reaffirmed by the U.S. Supreme Court in the recent case of *Mincey v.*

---

[3] We do not believe the dissent recites the evidence within this standard of review.

*Arizona*, 437 U.S. 385 (1978), wherein the Court said at 392: "We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." " '* * * [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' "

*State v. Resler*, 209 Neb. 249, _____, 306 N.W.2d 918, 922 (1981)(citations omitted); *see also State v. Cecil*, 311 S.E.2d 144 (W. Va. 1983). Police officers are not required to possess either the gift of prophecy or the infallible wisdom that comes with hindsight. Their conduct in making a warrantless search must be judged by the circumstances confronting the officers at the time they act. *Verez*, 230 Va. at 411, 337 S.E.2d at 753; *see also State v. Lynd*, 54 Wash. App. 18, _____, 771 P.2d 770, 773 (1989). The reasonableness of a police officer's response in a given situation is a question of fact for the trial court and its ruling will not be disturbed on appeal absent clear and manifest error. *State v. Fisher*, 141 Ariz. 227, 238, 686 P.2d 750, 761 (1984). The right of the police to enter and investigate in an emergency is inherent in the very nature of their duties as police officers. *See United States v. Barone*, 330 F.2d 543, 545 (2d Cir.), *cert. denied*, 377 U.S. 1004 (1964). A warrantless search during an emergency situation is "justified, if not required, by the fact that 'the preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties [sic].' " *Fisher*, 686 P.2d at 760.

We now consider the facts contained in the record as found by the trial court. At the outset, we note that there was no evidence supporting a finding that the entry was pretextual. The case began when Officer Vitek found Fogg in possession of stolen goods, among which were two shotguns. Fogg confessed that he had

taken the goods from appellants' house, which he had twice burglarized approximately one hour before. During at least one of the burglaries, the premises were occupied. Positive ownership of the guns could not be established until the owners were located and questioned. Upon being advised of the burglaries, Bailey joined Vitek and Fogg at the site of the crimes. Fogg showed them where he had gained entry and showed them the still-open front door through which he had exited with the stolen items. Vitek testified that he believed that there could have been a victim "injured or dead inside" as well as "evidence of breaking and entering inside the house." Bailey testified that he saw the necessity to secure the premises. The officers proceeded carefully and cautiously, obtaining as much relevant information as they could before entering appellants' house. "Police officers must not be doubted because they exercise caution and take the time to evaluate the need for a warrantless entry. Were we to hold otherwise, we would encourage precipitous and hasty entries and discourage pre-entry investigation and reflection." *Fisher*, 686 P.2d at 761; *see Verez*, 230 Va. at 405, 337 S.E.2d at 749.

> Police officers should be permitted to use their best judgment in deciding how to approach what may be emergency situations possibly fraught with danger to other unknown persons. While the claim of emergency must be scrutinized to insure that it is not mere pretext for entries and searches that otherwise fall under the requirement for a warrant, nonetheless courts should, as did the trial court here, avoid second-guessing police decisions made in legitimate belief that life may very well be at stake. "People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process."

*State v. Monroe*, 101 Idaho 251, 255, 611 P.2d 1036, 1040 (1980), *vacated on other grounds*, 451 U.S. 1014 (1981)(citation omitted).

No evidence in the record suggests that the entry into appellants' house for the reasons stated by Vitek and Bailey was a pretext to search for contraband or illegal activity rather than to look for possible victims and to secure the property. The police were acting in good faith under the circumstances and according to their responsibilities as law enforcement officers. The action of the

police in this case should be encouraged, not deterred. It is clear that this assistance required no writ.

## II. *Plain View*

The record reveals that Vitek and Bailey were aware that Fogg had gained entry into appellants' house through an opening on the porch. It further reveals that, after entering the house, Bailey, Vitek and Fogg walked straight to the porch area. They were lawfully on the premises and their discovery of the marijuana plants in plain view was inadvertent. Merely looking at that which is in plain view is not a search. *Cook v. Commonwealth*, 216 Va. 71, 73, 216 S.E.2d 48, 50 (1975).

■ The test for determining whether an item falls within the plain view rule is (1) the initial intrusion resulting in the plain view must be lawful, (2) discovery of the item must have been inadvertent, and (3) the incriminating nature of the item must be immediately apparent. *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971). The facts here are sufficient to meet the requirements of that test. For the reasons stated, the plants were subject to seizure and admissible in evidence. *Id.* at 464-69; *Harris v. United States*, 390 U.S. 234, 236 (1968); *Chevrolet Truck*, 208 Va. at 509, 158 S.E.2d at 758.

## III. *Consent to Search*

■ Appellants further assert that wife's consent to the search of their house was not voluntarily given because she was upset, isolated, and under arrest at the time she signed the consent form. When a defendant challenges the validity of a consent to search, the burden of proof is on the Commonwealth to prove that it was freely and voluntarily given. *Lowe*, 218 Va. at 678, 239 S.E.2d at 117. Whether that burden is met requires a review of the totality of the circumstances and is a question of fact. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973); *Hairston v. Commonwealth*, 216 Va. 387, 388, 219 S.E.2d 668, 669 (1975), *cert. denied*, 425 U.S. 937 (1976). The mere fact that a person is in custody at the time he or she consents to a search is not sufficient in itself to demonstrate a coerced consent to search. *United States v. Watson*, 423 U.S. 411, 424 (1976); *Lowe*, 218 Va. at 678, 239 S.E.2d at 117. Here, wife was told that she had the right to with-

440

hold her consent and the consent form was explained to her in detail. The form again advised her of her right to refuse consent. There were no drawn guns or display of hostility. The record supports the finding of the trial court that her consent was voluntarily given. *See Watson*, 423 U.S. 411; *United States v. Matlock*, 415 U.S. 164 (1974); *Stamper v. Commonwealth*, 220 Va. 260, 257 S.E.2d 808 (1979); *Hairston*, 216 Va. 387, 219 S.E.2d 668 (1975).

Appellants further allege that the consent, if voluntary, was so tainted by the warrantless entry that evidence of the cocaine found pursuant to that search should also be inadmissible against them. Having found that the warrantless entry was lawfully made, this argument must fail. Accordingly, we hold that the cocaine found on the premises was properly admitted into evidence.

## IV. *Sufficiency of the Evidence*

Appellants next argue that the evidence was insufficient to support their convictions for violation of Code § 18.2-248.1(c) because the Commonwealth failed to prove beyond a reasonable doubt that the marijuana grown by them and found in their possession was manufactured "not for their own use." We agree.

The Commonwealth is required to prove every material element of the alleged crime beyond a reasonable doubt, and, when it relies on circumstantial evidence to sustain that burden, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." *Inge v. Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976). To prove that the marijuana was being manufactured not for the personal use of appellants, the Commonwealth proved that growing on the premises were twenty-nine plants, in various conditions of health from good to poor, weighing a total of 1.16 grams; one other 14-inch plant growing in a pot in the kitchen; the presence of a scale; and a smoking pipe. From this evidence, we are asked to infer that over appellants' explanation that the plants were being grown for personal use, the plants were grown "not for their own use," a material fact necessary to be proved beyond a reasonable doubt. In considering that argument, we note that the record contains no evidence of how much saleable marijuana could be produced by the twenty-nine plants

found on the premises; no evidence of how many of the plants were actually healthy enough to produce useable product; no evidence as to the value, if any, of the product; no evidence of the presence of receptacles to bag the marijuana for resale; and no evidence of watering devices and lights to assist in its growth. While this type of evidence may not be necessary to prove production for use of others, and while the trial court is not bound to accept appellants' claim of personal use, the deficiencies identified are sufficient in this case to point to a failure of the Commonwealth to exclude the reasonable hypothesis that the plants were being grown for personal use. *See Adkins v. Commonwealth*, 217 Va. 437, 229 S.E.2d 869 (1976). In fact, the condition of the plants themselves tends to cast doubt on an assertion that the plants were being grown for other than personal use. Accordingly, the convictions for violation of Code § 18.2-248.1(c) are reversed and the appellants are dismissed from further prosecution for manufacture of marijuana not for their own use.

If the cocaine found in the house was properly admitted into evidence, appellants do not challenge the sufficiency of the evidence to support the convictions for possession of that drug. Having found that the motions to suppress that evidence were properly denied, we find that the possession of cocaine convictions are supported by the evidence.

In summary we find that the warrantless entry was lawful; that the consent to search was properly obtained; and the evidence was sufficient to support the possession of cocaine convictions. We further find that the evidence was not sufficient to support the convictions for violation of Code § 18.2-248.1(c).

Accordingly, for the reasons stated, we affirm the cocaine convictions. We reverse the marijuana convictions and remand those cases to the trial court for such further action, if any, as the Commonwealth may be advised.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Cole, J., concurred.

Benton, J., concurring and dissenting.

I concur with the majority that the evidence in this record does not prove beyond a reasonable doubt that the marijuana was manufactured "not for their use." Code § 18.2-248.1(c). Accordingly, I would reverse that conviction. However, I would overturn the trial judge's refusal to suppress the evidence, and I would reverse each of the convictions because of the unlawful, warrantless entry by the police into the residence of Douglas Clayton and Vicki Jean Reynolds.

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980).

It is axiomatic that "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. It is not surprising, therefore, that the Court has recognized as "a 'basic principle of Fourth Amendment law[,]' that searches and seizures inside a home without a warrant are presumptively unreasonable."

*Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1984) (citations and footnote omitted). "[E]xceptions to the warrant requirement are 'few in number and carefully delineated,' and . . . the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches. . . ." *Id.* at 749-50 (citation omitted). "[I]n each case a determination must be made whether the law enforcement officers had probable cause at the time of their warrantless entry to believe that cognizable exigent circumstances were present." *Keeter v. Commonwealth*, 222 Va. 134, 141, 278 S.E.2d 841, 846, *cert. denied*, 454 U.S. 1053 (1981). Contrary to the majority opinion, I believe that application of these principles to the evidence in this case demonstrates that the entry by the police was unreasonable and without justification.

The record establishes that on the afternoon of June 18, 1986, Deputy Sheriff Gary Vitek received information concerning a suspicious man in the vicinity of the home of Douglas and Vicki

Reynolds. Based upon the description of the man and his vehicle, Vitek stopped Mark Fogg, who had driven some distance from the residence. Fogg admitted to Vitek that he had broken into "Doug Reynolds' residence" and taken the stereo equipment and guns that Vitek observed in his vehicle. Vitek radioed for Investigator Bailey's assistance and awaited his arrival.

Bailey arrived at the scene of the arrest thirty to forty minutes later. Bailey questioned the burglar and then drove to the Reynolds' residence with the burglar in his vehicle. Vitek also drove to the Reynolds' residence. Vitek testified that after they arrived at the residence, Bailey and the burglar sat in Bailey's vehicle and had a conversation. He further testified that the three of them then went directly into the Reynolds' residence. The burglar corroborated this testimony.

Bailey, however, testified that he and the burglar inspected the exterior of the residence, including the window where the burglar had entered the residence. Bailey testified that he did not know where Vitek was during this inspection. The burglar denied inspecting the exterior of the residence with Bailey.

Neither Vitek nor Bailey attempted to contact either of the owners of the residence. They also did not contact any neighbors or the operator of a store across the intersection from the residence.

Both officers and the burglar entered the residence through the door that the burglar had left open in his departure. There is no suggestion that once inside the residence they looked for victims. When the officers entered the residence they did not go from room to room. Instead, they walked from the back door directly "through the house to a porch located at the front of the house." Bailey led the way followed by the burglar and then Vitek. Vitek could not recall whether the burglar was handcuffed; however, Bailey testified "I don't believe he was." The burglar testified that when they reached the sun room Bailey said that the plants on the floor were "pot plants." Bailey testified that the burglar pointed to the plants and identified them as marijuana.

The burglar testified that he "went back to Mr. Bailey's car and sat" after the officers saw the marijuana plants "and they came back outside, took my statement on tape." Bailey then contacted

Investigators Chenault and Hines for assistance.

The two vice squad investigators arrived at the residence approximately one hour later. They entered the residence, removed the potted plants, and placed them on the hood of a police vehicle. Bailey then left the burglar with Vitek and proceeded across the intersection to the country store in an attempt, for the first time, to locate the homeowners. Vicki Reynolds was contacted and was informed that her residence had been burglarized and that the police were waiting for her to identify the stolen property. Meanwhile, one of the investigators telephoned the Hanover Commonwealth's attorney for advice concerning the further search of the residence. It was decided that when Vicki Reynolds arrived, the officers would attempt to obtain her consent for any further search of the residence. If this consent was refused, the officers were to obtain a search warrant.

The Commonwealth argues that emergency or exigent circumstances existed because the officers reasonably believed that a threat to life or property existed. This evidence fails to establish the existence of either an emergency or exigent circumstances. Moreover, the evidence amply demonstrates that neither officer could have reasonably perceived that such existed. Their objective conduct, in fact, belies any suggestion that they believed that emergency or exigent circumstances existed.

The officers did not unholster their guns as they entered the residence. The officers also did not knock or announce their presence. Vitek testified that the reason they did not knock and announce themselves before entering was that they did not feel that anyone was inside. Vitek also testified that they had entered the house because "they were looking for the entrance and looking for the — to secure the residence to see if it was safe." Bailey testified: "I didn't expect anybody to be there. I went to secure the building." Because, as the officers stated, they did not believe that anyone, another burglar or otherwise, was in the residence, they could not have feared for their personal safety or the safety of the homeowners. The only suspect in the case was already in custody.

Significantly, the officers allowed the arrested burglar to accompany them into the residence rather than leaving him under observation, handcuffed, and secured in one of their vehicles. The officers gave no explanation on this record for taking the burglar,

who was heavily armed when arrested, into the residence at that time. The absence of handcuffs or other restraints on the burglar as they entered the residence removes all doubt that there existed, or that the officers perceived, an emergency or exigent circumstances.

Furthermore, at the time of the initial entry, the only contraband involved was the stolen property that had already been recovered from the burglar's vehicle. Thus, there was no reason for the officers to fear destruction of evidence. In addition, because there was no evidence prior to the entry that any other crime had been committed, no probable cause existed which would justify the warrantless entry.

A minimum of one hour and fifteen minutes elapsed between the time the burglar was stopped and the time the officers entered the residence. Although the officers expressed a desire to secure the residence, their failure to even attempt to contact the homeowners during the hour and a quarter interval negates the legitimacy of their expressed purpose. The officers had ample time to contact the homeowners, notify them of the burglary, and request that they come to the residence. Moreover, no evidence in this record suggests that the officers needed to enter the residence in order to secure it.

The evidence, and the reasonable inference that flows from it, strongly suggest that the burglar knew and told Bailey of the existence of marijuana plants in the sun room. However, in deciding this appeal, it is not necessary to determine whether that conclusion is justified. It suffices to say that, upon the evidence in this record, the Commonwealth failed to carry its heavy burden of justifying the warrantless entry prior to the arrival of the homeowners.

When Vickie Reynolds arrived at her residence she was confronted with the illegally obtained marijuana and arrested. Because the consent that was then obtained, even if voluntarily given, was not sufficiently attenuated from the illegal entry so as to purge the taint of the prior illegality, *Walls v. Commonwealth*, 2 Va. App. 639, 654, 347 S.E.2d 175, 183-84 (1986), the evidence obtained in the subsequent search also should have been suppressed.