## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

 v.

Christopher James Preaster

 September 25, 1995

 Case No. F95-2395

by JUDGE DONALD W. LEMONS

This matter is before the Court on the defendant's Motion to Suppress evidence seized from him on June 15, 1995. The Court heard evidence on August 29, 1995, and has received and reviewed the briefs filed by counsel for the defendant and the Commonwealth's Attorney. For the reasons stated below the Motion to Suppress is granted.

Detective Armstead testified that on June 15, 1995, he observed Christopher Preaster disembarking a bus at approximately 3:25 a.m. at the bus terminal in the City of Richmond. The bus had been "announced" as having arrived from Washington, D.C., which is known to narcotics detectives as a "source city." Detective Armstead defined a "source city" as "a city in which narcotics, illegal narcotics can be purchased in bulk quantity at a cheaper price and taken somewhere else and sold for a profit." After disembarking, Preaster was observed "looking for someone." He was by himself and carried one bag of luggage. After going to the front doors and "looking for somebody" and after a brief period of time in the cafe area, Preaster got into line to board a different bus.

At this time Detective Armstead approached Preaster. The evidence presented by the detective contrasts sharply with that of the defendant from this point forward. The detective states that he approached the defendant, identified himself and asked to speak to him. The detective states that Preaster told him, "yeah," and they moved to the side out of the way of other passengers boarding the bus. The detective states that he told Preaster:

that my job was to stop the flow of illegal narcotics from coming into and through this terminal. I asked him did he understand what I'm talking about. He replied, "yeah." And I then told him that this is not an arrest, nor he's — he's not under arrest, nor was he under detention; that I don't know him and as far as I know, he's a good person. Then I stated, do you have any illegal drugs on your person or in your bag. Mr. Preaster at that point stated "no." So I stated, do you mind if I search your person, your bag and its contents. He stated at that point, "go ahead."

The subsequent search of Preaster's bag uncovered drugs in plastic bags in a boot and a search of the defendant revealed drugs in his left jacket pocket. Detective Stephanie Ruffin testified that she had "no independent recollection" of the events of the evening except for the interview that she conducted with the defendant after his arrest. Both Detective Ruffin and Detective Armstead testified extensively about their "pattern" for a drug interdiction encounter.

The defendant recalled the events differently. Preaster states that Detective Armstead approached him and identified himself and told the defendant that "he was taking a survey of people from Jersey that was bringing narcotics through Richmond." Preaster acknowledges that the detective asked if he could "search through my belongings very briefly." Preaster says that he told the detective that he did not want to miss his bus and started to board the bus. The defendant testified that "at that time, before I got to step on the bus, he was shielding me to the left side of the bus." When asked to explain what "shielding" meant, Preaster responded to counsel's questions as follows:

A. Well, he blocked me from going to the bus. He told me to step over to the side of the bus.

Q. He told you to step over to the side. Did he do something physically to keep you from getting on the bus?

A. No, he shielded me. He just — he didn't really put his hands on me, but he swayed me over to the side. He said this will just take a brief moment, I'll be very fast.

The defendant's version is that he did not give Detective Armstead permission to search his bag and for his explanation stated emphatically, "Because I know that I have drugs on me for one thing, so I'm not going to give him permission to search my bag knowing that I have drugs on

me." According to the defendant, Detective Armstead took the bag off of his shoulder and searched the bag. The defendant states that he told the detective that his rights were being violated. The defendant maintains that he did not give consent and that his conduct in attempting to leave and board the bus indicated his lack of consent.

A search without a warrant must be justified by a permissible exception to the warrant requirement of the Fourth Amendment. In this case the Commonwealth alleges the consent of the defendant to the search. As the Court of Appeals has noted:

> In *Bumper v. North Carolina*, 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968), the United States Supreme Court held that the Fourth Amendment right to be free from unreasonable seizures may be waived, orally or in writing, by voluntary consent to a warrantless search of a person, property or premises. 391 U.S. at 548; see also *Coleman v. Commonwealth*, 226 Va. 31, 49, 307 S.E.2d 864, 874 (1983), cert. denied, 465 U.S. 1109, 80 L. Ed. 2d 145, 104 S. Ct. 1617 (1984). Implicit in the waiver of the warrant requirement is the waiver of the requirement of probable cause. The test of a valid consent search is whether it was "freely and voluntarily given." *Bumper*, 391 U.S. at 548; see also *Reynolds v. Commonwealth*, 9 Va. App. 430, 439, 388 S.E.2d 659, 665 (1990); *Limonja v. Commonwealth*, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989) (en banc), cert. denied, 495 U.S. 905, 109 L. Ed. 2d 288, 110 S. Ct. 1925 (1990); *Richards v. Commonwealth*, 8 Va. App. 612, 615-16, 383 S.E.2d 268, 270 (1989). The burden rests with the Commonwealth to demonstrate the lack of duress. *Lowe v. Commonwealth*, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977), cert. denied, 435 U.S. 930, 55 L. Ed. 2d 526, 98 S. Ct. 1502 (1978); *Hairston v. Commonwealth*, 216 Va. 387, 388, 219 S.E.2d 668, 669 (1975), cert. denied, 425 U.S. 937, 48 L. Ed. 2d 179, 96 S. Ct. 1671 (1976). The question of whether a particular "consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973).

*Deer v. Commonwealth*, 17 Va. App. 730, 734-735 (1994).

The probative evidence in this case has been narrowly confined to the testimony of the defendant and the testimony of the primary arresting detective. The other detective offers no independent recollection of the events pertinent to this motion. In this case if the Court finds the testimony of the detective more believable than the defendant then the Commonwealth has met its burden of proof by preponderance of the evidence and the Motion to Suppress must be denied. If the Court finds the testimony of the defendant more believable then no consent was given and the Motion to Suppress must be granted.

The fact that a citizen is charged with a criminal offense does not make his testimony any less credible. The fact that the Commonwealth's witness is a police officer does not make his testimony any more credible. Both witnesses come to the witness chair upon equal footing with no presumptions as to credibility.

There is nothing about the defendant's testimony that is inherently unbelievable. There is nothing about the detective's testimony that is inherently unbelievable. Neither the detective nor the defendant's testimony on the issue of consent is corroborated by other witnesses or circumstances. Neither the detective nor the defendant's testimony was effectively impeached. Neither the detective nor the defendant have criminal convictions that may "tip the balance" of credibility. There was nothing about the demeanor of either witness to suggest untruthfulness. The Commonwealth suggests that the defendant has a motive to lie to avoid a finding of guilt. But a motive to lie, without more, cannot be enough to "tip the scales" in favor of the Commonwealth because every criminal defendant has the same motive. Without more, utilizing a motive to lie as the *only* basis for favoring the Commonwealth's testimony over the defendant's testimony is tantamount to placing the burden of proof on the defendant rather than the prosecution.

As one Court noted in the appellate review of a suppression hearing:

> At times the court cannot decide that one witness is more credible than another. Compelling a choice between those witnesses would be tantamount to flipping a coin. The burden of proof rescues a trial court from that dilemma.

*State v. Ehlers*, No. 95-1008-CR, Court of Appeals of Wisconsin, August 24, 1995; see also, *United States v. Starr*, 434 F. Supp. 214 (D. D.C. 1977).

This Court does not find the need to be "rescued" from difficult decisions; however, the evidence in this case is in equipoise. Upon the evidence presented, the Court is unable to resolve the obvious conflict in testimony. The burden rests upon the Commonwealth and the Commonwealth has not met its burden. The defendant's Motion to Suppress is granted.