50

## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Juan Francisco Soriano

March 15, 2005

Case No. (Criminal) 106895

BY JUDGE ARTHUR B. VIEREGG

Defendant, Juan Soriano, is charged with assaulting a police officer in the early morning hours of October 9, 2004. The events giving rise to the alleged offense occurred in the apartment of Soriano's fiance, Angelica Cruz, and her sister, Ana Maia, where he was spending the night. Soriano moved to suppress all evidence related to the arrest. He contends that the arresting officers' entry into the apartment was accomplished without a warrant and was otherwise unreasonable. Evidence and argument was presented by the parties on March 11. At the end of the hearing, I took the matter under advisement. My decision follows.

*The Testimony*

Fairfax County Police Officer Stern testified he was dispatched to apartment number T-3 located at 7205 Harpin Lane, Alexandria (Fairfax County), Virginia in the early morning hours of October 9, 2004. The police dispatcher informed him that the department had received a report from an occupant of the apartment that a domestic "fight" was occurring between a man and the caller's sister. The dispatcher informed the officer that the matter was "urgent" and "high priority." Stern and a police trainee, Officer Ziontz, responded to the apartment immediately and

arrived at the apartment shortly after receiving the report. They were joined by Officer Smith, a "backup" officer. The three officers heard no noise as they approached the apartment. Once outside the apartment door, they knocked and announced their identities as police, whereupon they heard "voices" from inside the apartment.

After a delay of several minutes, Soriano opened the door. The officers explained that they had received a report of a fight in the apartment. They requested him to ask the female occupants to come to the door to ensure that "everyone was okay."

Soriano indicated that the occupants of the apartment had been asleep when the officers knocked. He was plainly inebriated and hostile. He did not directly dispute the fact there had been a fight. The officers asked to speak to both of the women in the apartment and, in particular, the woman who had made the complaint. Soriano said several times that the officers "had no business there." He demanded to know if the officers had a search warrant. At one point, Soriano took a step toward the officers, which they interpreted as being an aggressive act. Officer Stern heard what he thought to be a woman screaming. The officers entered the apartment.

On that evening, Soriano, Cruz, and Cruz's son occupied one bedroom. Maia and her three children occupied the other. On October 9, Soriano stayed in the apartment overnight several times a week. He now resides at the apartment full-time and contributes to the rent.

Maia testified that, in the early morning hours of October 9th, an argument between Soriano and Cruz occurred. She testified she called the police because she was afraid Soriano would hurt her. Soriano testified he was drunk. He also testified that a loud argument had taken place. Soriano, Cruz, and Maia all testified, however, that no one had screamed after the police arrived.

Maia testified that, after the police knocked at the door and after Soriano opened the door, she proceeded to the living area before the police entered. She testified that Soriano did not make any move toward the police but instead the police had entered when Soriano had denied him admittance. She furnished no testimony with respect to what was said by Soriano and the officers before they entered.

Cruz generally confirmed the argument. She denied, however, that there were red marks on her body. This testimony was disputed by Officer Ziontz, who testified he saw a red mark on her.

*Factual Findings*

I find that a loud altercation between Soriano and Cruz occurred in the early morning hours of October 9. Maia, fearing for her sister's safety, made the report of a domestic "fight," to the police dispatcher in such a way that the dispatcher relayed to Officer Stern that the situation was "urgent." The altercation appeared to have calmed after the call to the police. However, the officers responded promptly to the apartment. They encountered Soriano, who refused the officers' request that he invite the women in the apartment and, especially, the complainant to the apartment doorway. Soriano, instead demanded to know if the officers possessed a search warrant. Moreover, he was inebriated and combative. An ejaculation was heard, believed by Officer Stern, possibly to be a woman's scream. The officers proceeded into the apartment against the protests of Soriano.

Soriano, Cruz, and Maia all testified that no scream had occurred immediately before the officers entered the apartment.

I further find that the testimony of the officers was measured and credible. Cruz and Maia appeared to minimize the events of the evening, although Maia had set in motion the events that caused the officers to come to the apartment. This bias might have stemmed from the criminal charges brought against Soriano, who plainly was romantically involved with Cruz. Each had a motive for minimizing the circumstances that occurred on October 9. Furthermore, Soriano testified, both Soriano and Cruz had been drinking heavily. Their ability to perceive what was happening around them therefore is subject to question. The principal discrepancy between the testimony of Officer Stern and that of the occupants of the apartment is whether or not there was a noise that might have been a woman's scream that came from the apartment. I conclude some ejaculation was heard by Officer Stern.

*Decision*

The Fourth Amendment protects a person's home from "unreasonable government intrusion." *Alexander v. Commonwealth,* 19 Va. App. 671, 673, 454 S.E.2d 39 (1995). Only if police officers have probable cause to believe either that a criminal or fruits of a crime are present within, *Id.*, or that an emergency situation is unfolding, may the officers proceed into a person's home. *See, Mincey v. Arizona,* 437 U.S. 385, 392, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978). However, where

officers are confronted by emergent circumstances, a warrantless intrusion across the threshold of a dwelling is permissible.

In *Mincey,* the Court declared:

> We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized the Fourth Amendment does not bar police officers from making warrantless entries and searches when they *reasonably believe when a person within is in need of immediate aid.* . . . In justifying the particular intrusion, the police officer must be able to point to specific and particular facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . And in making that assessment, it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the search "warrant a man of reasonable caution in the belief that the action taken was appropriate?"

(Emphasis added.) *See, Reynolds v. Commonwealth,* 9 Va. App. 430, 437, 388 S.E.2d 659 (1990) (quoting the foregoing language from *Mincey* with approval).

This case then turns on the reasonableness of the officers' entry. I conclude it was reasonable when judged by the *Mincey* standard. First, it is plain the officers had information of a fight involving a man and a woman from another woman within the apartment. The informant therefore had first-hand knowledge of facts furnished to the police department. Although Officer Stern did not talk to this informant, he was advised that a domestic fight was occurring and that the situation was "urgent" or "high priority." Upon responding to the apartment, moreover, the officers encountered an individual who was both drunk and bellicose, a person who reasonably might have been involved in a fight. Furthermore, this man angrily rejected reasonable requests that the complainant and the woman reported to be involved in the "fight" be requested to come to the doorway. In the face of the unreasonable intransigence of Mr. Soriano, the officers had a choice. They might have left the premises, thereby abandoning a possible female victim they reasonably believed was involved in an altercation with the drunken, belligerent man they had encountered, or they might have crossed the threshold to ensure that the supposed woman was not in danger. I

conclude that the officers' conduct satisfied the standards of *Mincey*. They reasonably believed that a person inside was in need of immediate aid.

As stated in Reynolds:

> the right of the police to enter and investigate in an emergency is inherent in the very nature of their duties as police officers[.] [A] warrantless search during an emergency situation is "justified, if not required, by the fact that 'the preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties [sic]'."

*Reynolds, Id.* (quoting *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750, 761 (1984)) (other citations omitted) (applying emergency doctrine as type of exigent circumstance *permitting entry of residence* in course of investigating burglary and confirming safety of residents where police had already apprehended burglar who admitted prior entry into residence and noting "among the circumstances accepted as providing 'exigent circumstances' for a warrantless search are those where a true 'emergency' exists"). While the circumstances here differ from those in *Reynolds*, it is only in hindsight that it can now be determined that Ms. Cruz was not in danger. However, Officer Stern and his colleagues were not afforded the benefit of such hindsight in performing their duties in the early morning hours of October 9, 2004. It is precisely for that reason that their conduct must be judged by the information available to them and the reasonableness of their response to such information.

Defendant Soriano's motion to suppress must be denied.