COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Felton
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 1430-05-1             JUDGE WALTER S. FELTON, JR.
                                                        DECEMBER 13, 2005

BRANDON WAYNE WHITEHURST


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge

Eugene Murphy, Senior Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellant.

James O. Broccoletti (Zoby & Broccoletti, P.C., on brief), for
appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the judgment of the trial court

granting Brandon Wayne Whitehurst's motion to suppress evidence.  The Commonwealth contends

Officer Hunter's warrantless entry into Whitehurst's residence, after observing a pit bull briefly

enter the residence through its open front door, was justified under the emergency doctrine of the

exigent circumstances exception to the warrant requirement.  The Commonwealth argues that no

Fourth Amendment violation occurred and that the trial court erred in granting Whitehurst's motion

to suppress evidence of Whitehurst's marijuana cultivation.  For the following reasons, we affirm

the judgment of the trial court.

I.  BACKGROUND

On May 7, 2004, Virginia Beach Police Officer Jennifer Hunter was transporting a juvenile

to his home.  Around 2:17 p.m. residents living in townhouses adjacent to Whitehurst's residence

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

flagged her down and reported that a pit bull was roaming the neighborhood and had "charged" several residents. After taking the juvenile home, Officer Hunter returned to the neighborhood and observed the pit bull pacing back and forth in front of Whitehurst's residence. From inside her vehicle, Officer Hunter saw the pit bull enter Whitehurst's residence through the open front door. It stayed inside for 30 seconds before it left the residence and continued to pace up and down the street. Officer Hunter did not observe any signs of injury to the dog.

After animal control captured the pit bull, Officer Hunter approached Whitehurst's residence. The front door was open approximately two and a half feet[1] -- wide enough for Officer Hunter to observe that the television was on. There were no signs of forced entry or distress. However, the officer did observe another pit bull in the backyard of the residence. The record is silent as to whether the pit bull had the ability to leave the confines of the backyard. Officer Hunter retreated from the residence and called a backup unit for assistance.

When the additional officer arrived, Officer Hunter returned with him to the residence and knocked on the door, announcing "Virginia Beach Police," and shouting for the occupants to "[c]ome out." After receiving no response, Officer Hunter testified that they were concerned that someone inside the residence might have been injured by the pit bull. They entered the residence and immediately smelled a strong odor of marijuana. Officer Hunter testified that they searched the residence to ensure that no one was injured. In the course of their search, they discovered marijuana plants growing in an upstairs bedroom.

A hearing to suppress the evidence seized from appellant's residence was held on December 6, 2004. The Commonwealth argued the warrantless entry was justified under the emergency doctrine based on the pit bull's pacing outside of the residence, the officers' concern that someone

---

[1] The officer testified both that the front door was "wide open" and opened approximately two and a half feet. We place no significance on the apparent discrepancy.

in the residence may have been injured by the dog, and the lack of response to the officers' demand at the front door for any occupants to "come out." The trial court initially denied Whitehurst's motion to suppress the evidence. However, on reconsideration in light of our decision in Kyer v. Commonwealth, 45 Va. App. 473, 612 S.E.2d 213 (2005) (en banc), it subsequently granted the motion to suppress.

## II. ANALYSIS

The Commonwealth argues on appeal that the trial court erred in granting Whitehurst's motion to suppress, contending the warrantless entry fell within the scope of the emergency doctrine exception to the warrant requirement. We disagree.

In reviewing the Commonwealth's pretrial appeal, we "view the evidence in [the] light most favorable to [Whitehurst], the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence. We will not reverse the trial judge's decision unless it is plainly wrong." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991) (citing Commonwealth v. Holloway, 9 Va. App. 11, 20, 384 S.E.2d 99, 104 (1989)).

"Though the ultimate question whether the officers violated the Fourth Amendment triggers *de novo* scrutiny, we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Slayton v. Commonwealth, 41 Va. App. 101, 105, 582 S.E.2d 448, 449 (2003) (quoting Barkley v. Commonwealth, 39 Va. App. 682, 689-90, 576 S.E.2d 234, 237-38 (2003)). "Thus, we must give 'deference to the factual findings of the trial court' and 'independently determine' whether those findings satisfy the requirements of the Fourth Amendment." Kyer, 45 Va. App. at 479, 612 S.E.2d at 217 (quoting Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003)).

"It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Welsh v. Wisconsin, 466 U.S. 740, 748 (1984)

(citation omitted). However, the Fourth Amendment endorses no absolutes, condemning only "unreasonable searches and seizures." Kyer, 45 Va. App. at 480, 612 S.E.2d at 217. One recognized concession to reasonableness is the emergency doctrine, which permits police to make "'warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.'" Reynolds v. Commonwealth, 9 Va. App. 430, 437, 388 S.E.2d 659, 664 (1990) (quoting Mincey v. Arizona, 437 U.S. 385, 392 (1978)); see Kyer, 45 Va. App. at 480, 612 S.E.2d at 217. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Reynolds, 9 Va. App. at 437, 388 S.E.2d at 664.

In Kyer, police received a tip regarding a burglary suspect that led them to Kyer's apartment. When the officers arrived around 4:00 a.m., the front door of the apartment was open wide enough for an individual to "walk through it without touching the door." 45 Va. App. at 477, 612 S.E.2d at 215. Fearing someone had "forced entry or broken into the home," id., the officers went inside. The trial court found the officers' entry fell within the exigent circumstances exception to the warrant requirement. In reversing, we noted that the situation there included "only one arguably suspicious circumstance: an open door." Id. at 481, 612 S.E.2d at 217.

> There were no signs of forced entry - such as pry marks, mangled locks, broken hinges, or disfigured door jams. No one called out for help. No sounds or observations suggested panic or danger within the apartment. There were no reports from neighbors about any unique medical concerns or other vulnerabilities of the apartment's occupants. Nor did any of Kyer's neighbors report any suspicious circumstances suggesting foul play.

Id. at 481-82, 612 S.E.2d at 217-18. Accordingly, we concluded "when the 'only evidence of an emergency was a door left open . . . [,] regardless of what the officers may subjectively have thought, a reasonable person would not believe an emergency existed,'" id. at 482, 612 S.E.2d at 218 (quoting State v. Swenson, 799 P.2d 1188, 1190 (Wash. Ct. App. 1990) (noting that a "barking

dog [in the front of the residence] was ambiguous, and by itself could not suggest an individual in medical distress")).

Similar to Kyer, the only arguably suspicious circumstance here was an open front door through which a pit bull had briefly entered and left. There were no signs of distress after the dog departed the residence. There were no reports of anyone inside the residence being attacked by the dog, nor were there any cries for help. Moreover, Officer Hunter observed no signs of forced entry or distress when she initially approached the open front door. The fact that no one responded to Officer Hunter's knocking and shouting to "[c]ome out," when the television was clearly audible, does not support the existence of an emergency. "'It is simply too common an event to create a concern of harm in the absence of other signs of trouble.'" Id. (quoting State v. Christenson, 45 P.3d 511, 514 (Or. Ct. App. 2002) (finding the escape of two pit bulls from a residence with an open front door "did not advance the justification for entering the house, because entry into the house was not reasonably necessary to secure the dogs")). Likewise, the presence of the pit bull in the backyard does not justify a reasonable belief that someone inside was injured. Moreover, nothing in the record demonstrates the second pit bull could have exited the backyard to roam the neighborhood.

Given these facts, there was no justification for an objectively reasonable officer to believe the emergency doctrine was applicable. The officers, therefore, had no legal right to enter Whitehurst's residence. Consequently, the trial court did not err in granting Whitehurst's motion to suppress evidence.

The judgment of the trial court is affirmed.

Affirmed.