COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Humphreys and Senior Judge Willis
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                        MEMORANDUM OPINION[*] BY
v.       Record No. 0044-07-1           JUDGE LARRY G. ELDER
                                              JUNE 12, 2007

JAMES EDWARD O'NEAL


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge

> Josephine F. Whalen, Assistant Attorney General II (Robert F.
> McDonnell, Attorney General, on brief), for appellant.
>
> Moody E. Stallings, Jr. (Cara L. Griffith; Stallings & Bischoff, PC,
> on brief), for appellee.


James Edward O'Neal (defendant) stands indicted for possession of marijuana with intent
to distribute. Pursuant to Code § 19.2-398, the Commonwealth appeals a pretrial ruling granting
defendant's motion to suppress all evidence resulting from the search of his residence that
yielded the marijuana. The trial court concluded the emergency aid doctrine did not render the
search reasonable under the Fourth Amendment. We affirm the ruling granting the motion to
suppress and remand for further proceedings consistent with this opinion.

Examining a trial court's ruling on a motion to suppress evidence allegedly seized in
violation of the Fourth Amendment "presents a mixed question of law and fact that we review *de
novo* on appeal. In making such a determination, we give deference to the factual findings of the
trial court and independently determine whether the manner in which the evidence was obtained
[violated] the Fourth Amendment." Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

836, 838 (2002) (citations omitted); see also Ornelas v. United States, 517 U.S. 690, 691, 699, 116 S. Ct. 1657, 1659, 1663, 134 L. Ed. 2d 911 (1996).  On appeal of a ruling granting a defendant's motion to suppress, the Commonwealth has the burden to show that the trial court's ruling constituted reversible error.  Cf. Murphy, 264 Va. at 573, 570 S.E.2d at 838 (applying converse standard to trial court's ruling *denying* motion to suppress).

"Among the many interests served by the Fourth Amendment, the privacy interest in one's home has few equals. . . .  [However,] the Fourth Amendment's text endorses no absolutes. It . . . condemns only 'unreasonable' searches and seizures."  Kyer v. Commonwealth, 45 Va. App. 473, 480, 612 S.E.2d 213, 217 (2005) (en banc).  Pursuant to the emergency doctrine, as set out in Mincey v. Arizona, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), and recently reaffirmed in Brigham City v. Stuart, ___ U.S. ___, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006):

> [T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. . . .  "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency."  Wayne v. United States, 115 U.S. App. D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.).

Mincey, 437 U.S. at 392-93, 98 S. Ct. at 2413, 57 L. Ed. 2d at 300; see Stuart, ___ U.S. at ___, 126 S. Ct. at 1947, 164 L. Ed. 2d at 657-58; see also Kyer, 45 Va. App. at 480-82, 612 S.E.2d at 217-18 (discussing community caretaker and emergency aid doctrines); Reynolds v. Commonwealth, 9 Va. App. 430, 437, 388 S.E.2d 659, 663 (1990) (applying emergency aid doctrine).  Thus,

> One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. . . .  [L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.  Mincey, [437 U.S.] at 392, 98 S. Ct. [at 2413], 57 L. Ed. 2d [at 300]; see also Georgia

v. Randolph, 547 U.S. 103, ___, 126 S. Ct. 1515[, 1525], 164 L. Ed. 2d 208[, 224] (2006) ("[I]t would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or a threat of violence) has just occurred or is about to (or soon will) occur[.]").

Stuart, ___ U.S. at ___, 126 S. Ct. at 1947, 164 L. Ed. 2d at 657-58.

The "emergency" test we adopted in Reynolds requires that:

"'[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'"

Reynolds, 9 Va. App. at 437, 388 S.E.2d at 663-64 (quoting State v. Resler, 306 N.W.2d 918, 922 (1981) (quoting Root v. Gauper, 438 F.2d 361, 364-65 (8th Cir. 1971) (quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968)))). As the Supreme Court made clear in Stuart, whether the officers' invocation of the emergency doctrine was pretextual is irrelevant; for purposes of the Fourth Amendment, the intrusion is to be judged under a standard of objective reasonableness. Stuart, ___ U.S. at ___, 126 S. Ct. at 1947, 164 L. Ed. 2d at 657-58; see Robinson v. Commonwealth, 273 Va. 26, 35-38 & n.2, 639 S.E.2d 217, 222-24 & n.2 (2007) (discussing Supreme Court's application of objective reasonableness standard to emergency aid exception in Stuart; noting that only exception to objective standard recognized by Supreme Court "involves searches 'undertaken pursuant to a scheme without individualized suspicion'"; and concluding that objective standard also applies to assessment of searches conducted pursuant to implied consent), cert. denied, 2007 U.S. LEXIS 5932 (May 21, 2007).

Thus, to the extent our prior case law holds or implies that the emergency aid doctrine or community caretaker doctrine does not legitimize a search that is objectively reasonable but

pretextual, Stuart implicitly overrules those holdings. See, e.g., Reynolds, 9 Va. App. at 437, 438, 388 S.E.2d at 664 (implying that "emergency doctrine" would not apply in case where entry of residence was pretextual). Under Stuart, as long as the search is objectively reasonable under the emergency aid doctrine, it does not violate the Fourth Amendment. ___ U.S. at ___, 126 S. Ct. at 1947, 164 L. Ed. 2d at 657-58.

In Stuart, the Court held the facts confronting the officers provided them with "an objectively reasonable basis for believing both that [an] injured adult might need help [inside the house] and that the violence . . . was just beginning." ___ U.S. at ___, 126 S. Ct. at 1949, 164 L. Ed. 2d at 659. Those facts involved police officers who were responding to complaints about a loud party at 3:00 a.m. Id. As the police approached the house, "they could hear from within 'an altercation occurring, some kind of a fight.'" Id. Because it was "'obvious that . . . knocking on the front door' would have been futile" and because "[t]he noise seemed to be coming from the back of the house," the officers proceeded to the back, where, through a window, they observed a fight taking place inside the kitchen. Id. They saw a "juvenile, fists clenched, . . . being held back by several adults," and then observed the juvenile "break[] free and strike[] one of the adults in the face, sending the adult to the sink spitting blood." Id. In holding the officers' entry did not violate the Fourth Amendment, the Court held that they were not "required to wait until another blow rendered someone 'unconscious' or 'semi-conscious' or worse before entering" and noted that "[t]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties[] [or] . . . stop[ping] a bout only if it becomes too one-sided." Id. at 1949, 164 L. Ed. 2d at 659-60; see also, e.g., United States v. Booth, 455 A.2d 1351, 1356 (D.C. 1983) (upholding entry under emergency aid doctrine where officer "had received a radio report that an assault was in progress [at a particular address]; when he arrived

- 4 -

at that address, the person answering the door . . . had dried blood on his face; and [the person] did not respond to [o]fficer[’s] . . . question as to where the blood came from”).

In Kyer, by contrast, we held the officers’ entry into a private residence was not justified by the emergency doctrine. The officers had just apprehended one of two burglars seen fleeing a break-in at the Southside Speedway. 45 Va. App. at 477, 612 S.E.2d at 215. Following a tip from the detained suspect, the officers proceeded to a particular residential address based on their suspicion that the second burglar resided there. Id. When the police arrived at that address at 4:00 a.m., they observed the front door was “open wide enough for an individual to ‘walk through it without touching the door.’” Id. Receiving no response to their knocking, the officers entered the residence. Id.

In holding the officers’ entry into a private residence was not justified by the emergency doctrine, we reasoned they were aware of “only one arguably suspicious circumstance” before entering the residence--“an open [apartment] door” at 4:00 a.m. “on an August night.” Id. at 481, 612 S.E.2d at 217.

> There were no signs of forced entry . . . . No one called out for help. No sounds or observations suggested panic or danger within the apartment. There were no reports from neighbors about any unique medical concerns or other vulnerabilities of the apartment’s occupants. Nor did any of Kyer’s neighbors report any suspicious circumstances suggesting foul play.

Id. at 481-82, 612 S.E.2d at 217-18 (footnote omitted). In addition, we noted, the officers “could [not] reasonably assume Kyer returned home to commit ‘a crime in his own residence.’” Id. at 481 n.3, 612 S.E.2d at 217 n.3. On those facts, we held a reasonable police officer “‘would not believe an emergency existed.’” Id. at 482, 612 S.E.2d at 218 (quoting State v. Swenson, 799 P.2d 1188, 1190 (Wash. Ct. App. 1990)).

The facts here are more akin to those in Kyer than in Stuart. Like in Kyer, the investigating officer, R.A. McGraw, had insufficient grounds for believing someone inside

- 5 -

defendant's residence may have been in need of emergency aid and that immediate action was required. The 911 caller indicated the parties, who resided together, were engaged in a heated domestic dispute *in the parking lot* of a particular apartment complex. Based on the dispatcher's classification of the call as a Priority 2, Officer McGraw believed the caller had reported merely "*the possibility* for physical harm or danger." (Emphasis added). Officer McGraw received no indication that any physical violence had occurred between the two on that or on any prior day. Although Officer McGraw proceeded to the parking lot and obtained independent confirmation that a man and woman had been engaged in a heated argument in the parking lot as the 911 caller had reported, the on-scene observer also provided no indication that the argument had escalated to physical violence.

Further, by the time Officer McGraw arrived at the scene, the parties were no longer in the parking lot and the record contains no evidence regarding the circumstances surrounding their departure--whether the argument had continued as the parties departed, whether they had left the parking lot together or separately, or where they had gone when they left. Officer McGraw had to run the parties' names through the police database to learn in what apartment they resided. As Officer McGraw approached the apartment over fifteen minutes after completing her conversation with the on-scene observer and an unknown amount of time after the 911 call was received, she neither heard nor saw anything to indicate the argument was ongoing or that it had escalated to physical violence. She heard no raised voices or other sounds from the apartment, and when defendant opened the door, she saw no overturned furniture, weapons, blood, or any other signs to indicate that a physical altercation had occurred.

Although defendant was perspiring when he came to the door, the trial court found that defendant's perspiring could be readily explained by the fact that the events occurred in the middle of the summer. The trial court made no specific finding regarding the reason for

- 6 -

defendant's delay in opening the door after Officer McGraw identified herself, but the record did not indicate how long the delay was. Viewing the evidence in the light most favorable to defendant, as we must, the delay could easily have resulted from some innocent event such as defendant's having undressed to take a shower on a hot July day and needing to don his clothes again before opening the door to Officer McGraw.

Although defendant's denying he had had an "altercation" or "fight" with Ms. Martinez was suspicious in light of Officer McGraw's corroborated information that a heated argument between the two had occurred in the parking lot a few minutes earlier, defendant's response, viewed in the light most favorable to him, constituted a statement merely that he and Martinez had not engaged in any *physical* fighting and did not clearly constitute a denial that a verbal disagreement had occurred. Finally, defendant stated that Ms. Martinez was not at home. This evidence, viewed in the light most favorable to defendant, was insufficient to permit a reasonable police officer to conclude that Ms. Martinez was inside the apartment and seriously injured or threatened with such injury and "in need of immediate aid." See Mincey, 437 U.S. at 392-93, 98 S. Ct. at 2413, 57 L. Ed. 2d at 300. Compare State v. Drennan, 101 P.3d 1218, 1231-32 (Kan. 2004) (evidence sufficient to provide objectively reasonable basis for entry under emergency aid doctrine where police knew of prior history of violence between defendant and live-in girlfriend; neighbor reported hearing argument and woman's scream followed by silence; defendant did not come to door immediately when officer knocked and rang bell; and when defendant did open door, he was "sweaty and agitated," refused repeated requests to tell officers where girlfriend was, and eventually told them she was not at home but would not state where she had gone).

For these reasons, we hold the evidence supports the trial court's ruling that the emergency aid doctrine did not apply.  Thus, we affirm the ruling suppressing the challenged evidence and remand for further proceedings consistent with this opinion.

<u>Affirmed and remanded.</u>